Patrick N. CAROSELLA, Petitioner,

v.

UNITED STATES POSTAL
SERVICE, Respondent.

Appeal No. 86–1207.

United States Court of Appeals,
Federal Circuit.

April 14, 1987.

David L. Smith, Denver, Colorado, argued, for petitioner.

Diane Marshall Ennist, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With her on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan. R. Andrew German, Acting Asst. Gen. Counsel and Suzanne Hassell Milton, Atty., U.S. Postal Service, of counsel.

* The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25,

Before FRIEDMAN, Circuit Judge, BALDWIN *, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Patrick N. Carosella, a supervisory employee of the United States Postal Service (the "agency"), was removed from his position based on charges of sexual harassment and soliciting deviation from official reporting time. The Merit Systems Protection Board (the "Board") sustained the removal, holding that the penalty was reasonable under the circumstances and that removal promoted the efficiency of the federal service. *Carosella v. United States Postal Service*, 30 M.S.P.R. 199 (1986).

### The Sexual Harassment Charge

The Postal Service defined sexual harassment in its Postal Policy, published in Postal Bulletin 21240 dated April 10, 1980, as follows:

> Sexual harassment is ... deliberate or repeated unsolicited verbal comments, questions, representations or physical contacts of an intimate sexual nature which are unwelcome to the recipient.... [C]onduct constituting sexual harassment will not be tolerated.... Employees who engage in sexual harassment in the workplace can expect serious disciplinary action.

The agency deciding official, summarizing the evidence and applying this definition, stated in his Letter of Decision: "My review of the complete file in this case shows clear and abundant evidence of your protracted, patterned, and widespread attempted subordinate exploitation." Mr. Carosella appealed his removal to the Board, in accordance with the rules.

Following a full hearing the presiding official upheld the agency action, finding that the charges were supported by a preponderance of the evidence. The full Board, in its Opinion and Order affirming the action, reviewed the testimony and found that it "clearly establishes that the

1986.

appellant's conduct created an intimidating and offensive working environment, had serious adverse effects on the working conditions of these witnesses, and constituted prohibited sexual harassment as defined in 29 C.F.R. § 1604.11 and as elaborated in *Downes*". 30 M.S.P.R. at 202 (citing *Downes v. Federal Aviation Administration*, 775 F.2d 288 .(Fed.Cir.1985)).

29 C.F.R. § 1604.11 sets forth the "Equal Employment Opportunity Commission's Guidelines on Discrimination Because of Sex", promulgated in 1980 in connection with Section 703 of Title VII, which provides:

> It shall be an unlawful employment practice for an employer—(1) ... to discriminate against an individual with respect to his [sic] compensation, terms, conditions, or privileges of employment, because of ... sex....

42 U.S.C. § 2000e–2(a)(1). The pertinent portion of 29 C.F.R. § 1604.11(a) reads:

> Harassment on the basis of sex is a violation of Sec. 703 of Title VII. [Footnote omitted.] Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

These Guidelines were discussed with approval in *Meritor Savings Bank, FSB v. Vinson,* — U.S. —, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), a Title VII case on workplace sexual harassment. In *Meritor* the Court explained actionable sexual harassment as follows:

> [W]hen a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor "discriminate[s]" on the basis of sex.

*Id.* 106 S.Ct. at 2404 (citations omitted). The Court added:

> Since the guidelines [§ 1604.11] were issued, courts have uniformly held, and we agree, that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment....
>
> "Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality."

*Id.* 106 S.Ct. at 2405–06 (quoting *Henson v. Dundee*, 682 F.2d 897, 902 (11th Cir.1982)).

■ Mr. Carosella argues that no one was injured or suffered any economic loss because of his actions. However, economic or other tangible injury is not an essential component of a finding of sexual harassment. Although "quid pro quo" sexual harassment, so-called when an economic benefit is offered in exchange for sexual favors, can violate Title VII, *see id.* 106 S.Ct. at 2404, harassment "sufficiently severe or pervasive" to "create an abusive working environment" will itself support a finding of sexual harassment. *Id.* 106 S.Ct. at 2406.

■ The agency found and the Board affirmed that Mr. Carosella had sexually harassed six female Postal Service workers, five of whom were probationary employees under his supervision at the Terminal Annex of the Denver Post Office. These women all testified that Mr. Carosella repeatedly asked them "out for a drink", in spite of their repeated refusals; five of them testified that he touched them in offensive ways, and four of the five women who were probationary employees testified that they were concerned about keeping their jobs.

In brief summary, witness Anastasia M. Meshefski testified that Mr. Carosella said "maybe you'd better think about it" when she refused an invitation, that invitations were repeated during her probationary period, and that she became concerned about her position with the Postal Service and

"very nervous ... [and] had a hard time functioning at work...." Terri Ofsanko, a probationary distribution clerk, testified that on several occasions Mr. Carosella asked her to go out with him; that she repeatedly declined the invitations; that there were "times when he'd just come up and brush up against you and put his arm around you and ask" for a date. Ms. Ofsanko also testified that she was concerned about her continued employment with the Postal Service because she rejected Mr. Carosella's requests. Debbie C. Hill testified that she became apprehensive about her job because she refused Mr. Carosella's frequent invitations, and that because of these incidents she "ended up with a nervous stomach ... was put on medication ... [and later] put on light duty because of the situation." Nympha Mazzola and Peggy J. Cisneros, also supervised by Mr. Carosella, each testified as to Mr. Carosella's unwelcome invitations and physical contacts. Ms. Mazzola testified that she feared Mr. Carosella and feared that she would be fired in view of her probationary status and her refusal of his invitations.

Mary K. McFarland, a Postal Service employee not under Mr. Carosella's supervision, testified that she filed a grievance after she was offensively physically touched by Mr. Carosella; the grievance was settled when Mr. Carosella admitted the incident and promised that "it would never happen again".

Union steward Timothy E. Stolz testified that he had received complaints about Mr. Carosella from female employees; that he had been contacted by Beverly Barnes, an Annex supervisor, regarding Mr. Carosella's behavior; and that witnesses Hill, Meshefski, Ofsanko, and Cisneros had related to him the "difficulties" they were encountering with Mr. Carosella. Postal Inspector Robert N. Walls testified that Mr. Carosella admitted to some physical touching of some of these women.

Joseph Petrosky, an acting supervisor who worked with Mr. Carosella, testified that Ms. Cisneros had complained to him about Mr. Carosella's treatment of and advances toward her. Mr. Petrosky testified that he spoke to Mr. Carosella about it and was told "to mind my own business and that he wasn't doing anything."

Mr. Carosella testified that he "never really sexually harassed any of these females" and that he had advised his employees of their right to file a complaint with the Equal Employment Opportunity Commission if they believed they were being sexually harassed. He further testified that he talked with his hands because of "my nature or my nationality. I'm an Italian.... I have a bad habit of maybe grabbing [people] by the arm or touching them in the back or something like that ... whether it's a female or male."

Mr. Carosella admitted asking the women for dates but denied that he had ever indicated that their continued employment was contingent on their acceptance. He admitted kissing Ms. Cisneros on several occasions, but denied offering to clock her out so that she could spend time with him (the charge of deviation from official reporting time, discussed *infra*). He argued that no economic penalties were suffered, and stated that none of the women told him that his advances were unwelcome. He said that he exercised "poor judgment" but that he did not "see where sexual harassment comes in asking someone to go out for a drink and doing my job as far as standing in an aisle and looking at people."

The presiding official analyzed the evidence, remarked that some of the testimony was conflicting, and found that Mr. Carosella's testimony was less credible than that of the other witnesses. A determination of the credibility of witnesses is the province of the official who heard their testimony and observed their demeanor. *Griessenauer v. Department of Energy*, 754 F.2d 361, 364 (Fed.Cir.1985). That determination will not be disturbed unless it is "inherently improbable or discredited by undisputed fact or physical evidence." *Dittmore-Freimuth Corp. v. United States*, 390 F.2d 664, 685 (Ct.Cl.1968). Nothing in the record suggests that the presiding official's credibility determination was inherently improbable or discredited.

The presiding official found that Mr. Carosella "knew or should have known that his position as supervisor would have created at least the appearance of an intimidating circumstance when he asked his subordinates out for a drink and they refused", and that Mr. Carosella's "position allowed him to harass the female employees because they were probationary employees and subject to summary dismissal". The presiding official concluded that the agency had shown by a preponderance of the evidence that Mr. Carosella had sexually harassed these female employees; that the agency had shown that it promoted the efficiency of the federal service to remove Mr. Carosella for these offenses; and that the penalty of removal was both appropriate and reasonable. The full Board affirmed. The Board's conclusion is not contrary to law, and its factual findings are supported by substantial evidence and are not arbitrary or capricious. 5 U.S.C. § 7703(c). *Mitchum v. Tennessee Valley Authority*, 756 F.2d 82, 85 (Fed.Cir.1985).

### The Charge of Soliciting Deviation from Reporting Time

Mr. Carosella asserts that the Board's finding that he solicited deviation from official reporting time is not supported by substantial evidence. Ms. Cisneros testified that "he had offered to have me clocked in for Friday and be paid for it to go out with him." Mr. Carosella testified that "there's no way in the world I'll ever do something stupid like that.... There's been too many supervisors been accused of doing stuff like that."

The presiding official found Ms. Cisneros' testimony more credible than that of Mr. Carosella, and the Board upheld the charge. On this appeal Mr. Carosella has not discredited Ms. Cisneros' testimony or shown that it is inherently improbable. The Board's holding on this charge is affirmed.

### Due Process

Mr. Carosella argues that he was deprived of due process of law because, he states, certain EEOC notice requirements were not met, and the EEOC Guidelines of 29 C.F.R. § 1604.11 were applied retroactively.

Mr. Carosella asserts that due process required that the agency follow the notice requirements of 29 C.F.R. § 1613.-214(a)(1). Section 1613.214(a)(1) describes procedures before the EEOC when an employee brings a Title VII action; it does not apply to an agency's adverse action under 5 U.S.C. 7513(a). Mr. Carosella has not asserted that the procedural requirements for agency action under Chapter 75 were not met. In such action the agency is not an EEOC "complainant"; nor is it required that a complainant file an EEOC action as a prerequisite to agency discipline of an employee whose actions are affecting the work environment. The right or opportunity for a victim of sexual harassment to seek redress under Title VII has no bearing on the right of an employer to establish and enforce reasonable rules governing the workplace. *Accord Hostetter v. United States*, 739 F.2d 983, 987 (4th Cir.1984) (affirming the discharge of a civilian employee for sexual harassment based on an Air Force regulation and without reference to the requirements of section 1604.11 or Title VII, stating that the Air Force has the right to discipline the employee without "the victims of such behavior pursu[ing] their EEO remedies").

Mr. Carosella states that the behavior with which he was charged began some weeks before November 1980, the effective date of 29 C.F.R. § 1604.11. His behavior did not abate after this date, however. Thus his status prior to this date is not material, for he acquired no right to continue prohibited acts merely because he began them before they may have been prohibited. Further, an interim EEOC guideline had been issued effective April 11, 1980, two months before the first reported incident of misconduct. This interim guideline contained the same definition of sexual harassment as that of section 1604.11. The Postal Policy was published on April 10, 1980. This policy accords not only with section 1604.11, but with earlier judicial decisions. In *Meritor* the Court dealt with

behavior which occurred between 1974 and 1977, and applied section 1604.11, and the decisions on which the EEOC based section 1604.11, to that behavior. Thus there is no substance to Mr. Carosella's objection to the asserted retroactive application of section 1604.11.

■ The Postal Service policy statement requires certain workplace behavior in furtherance of the efficiency of Postal Service operations. An employer is not required to tolerate the disruption and inefficiencies caused by a hostile workplace environment until the wrongdoer has so clearly violated the law that the victims are sure to prevail in a Title VII action. The agency need show only that "the employee's misconduct is likely to have an adverse effect upon the agency's functioning." *Mings v. Department of Justice*, 813 F.2d 384, 389 (Fed.Cir. 1987). *See also, e.g., DeWitt v. Department of the Navy*, 747 F.2d 1442, 1444 (Fed.Cir.1984) (lesser standard of proof required for a removal action based on a theft charge than for a criminal action based on the same charge). *Accord Hostetter*, 739 F.2d at 986–87.

Further, the employer need not place its own liability at risk, as could follow if an employer fails to take timely action after receiving notice of the prohibited acts. In *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983), the court said "the plaintiff must demonstrate that the employer had actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action".

### The Penalty

■ The agency has discretion, by choice of penalty, to balance the egregiousness of the behavior against any mitigating factors. The Board summarized the presiding official's findings that "the penalty of removal for the appellant's misconduct promoted the efficiency of the service and did not exceed the bounds of reasonableness, despite his length of service and good work record, in light of the number and severity of the charges and his status as a supervisor", 30 M.S.P.R. at 201.

■ The Board's affirmance of the agency's choice of penalty will not be disturbed unless it is so harsh and inappropriate as to exceed the agency's discretionary authority. *Villela v. Department of the Air Force*, 727 F.2d 1574, 1576 (Fed.Cir.1984); *accord Snipes v. United States Postal Service*, 677 F.2d 375, 376 (4th Cir.1982) (removal of supervisor for sexual harassment promoted the efficiency of the service).

■ The Board's careful analysis of the asserted mitigating factors, in the context of the proven offenses, reflects a "responsible balancing" of interests. *Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984). The penalty imposed is not unreasonable under the circumstances shown, and is affirmed.

AFFIRMED.