Dennis **MOORE**, Plaintiff,

v.

**DEFENSE LOGISTICS AGENCY**, Defendant.

Nos. 83 C 6698, 85 C 10373.

United States District Court, N.D. Illinois, E.D.

Aug. 13, 1987.

---

Dennis Moore, pro se.

Elizabeth Landes, Gillum Ferguson, Asst. U.S. Attys., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Dennis Moore ("Moore") was removed from his position as an Accounting Technician with the Defense Logistics Agency (the "Agency") in April of 1983 on the grounds of insubordination and for being absent without leave. Moore filed this action (85 C 10373) seeking review of the United States Merit Systems Protection Board (the "Board") decision affirming his removal. After the filing of this petition, the Agency moved for summary affirmance,[1] which Moore opposes on numerous

---

1. Moore contends that there is no provision in the Administrative Procedure Act for a motion for summary affirmance; and, therefore, the Agency's motion must be denied. The Court disagrees. No matter what the motion is designated, our review is controlled by 5 U.S.C. sec.

grounds. For the reasons set forth below, we grant the Agency's motion.

## I. STATEMENT OF FACTS

From March of 1981 through November of 1981, while employed by the Agency in its regional office at O'Hare International Airport, Moore used a total of 141 hours of sick leave and 114 hours of annual leave. Ms. Geraldine Pharr, Moore's immediate supervisor, noticed that Moore was using his sick leave as it accrued, and began to suspect that he was abusing his leave. Rather than taking immediate action against Moore, however, Ms. Pharr discussed Moore's situation with her supervisor, Marie Hudson. Ms. Hudson advised Ms. Pharr to counsel Moore about his abuse of leave, and if his situation did not improve, to require him to provide medical certification of any subsequent absences.

In fact, Ms. Pharr counseled Moore on several occasions about the pattern in which he was using his leave. Notwithstanding these counseling sessions, Moore's use of leave did not improve, and on December 3, 1981, the Agency issued him a letter of instruction which contained specific guidelines for Moore to follow regarding his future use of leave. Most importantly, the letter of instruction required Moore to provide the Agency with proper medical certification following his use of sick leave, and notified him that disciplinary action might result if he failed to follow its strictures.

After receiving the letter of instruction, Moore failed to abide by its requirements. On May 20, 1982, the Agency officially reprimanded Moore for being absent without leave ("AWOL") on March 31 and April 12, 1982, and for insubordination based upon his refusal to submit medical certification for these absences as required by the letter of instruction. On May 12 and 19, 1982, Moore was again charged with

insubordination for refusing to obey the instructions of his supervisors. The Agency initially suspended Moore for 10 days, but on December 3, 1982, following grievance proceedings, reduced the suspension to another reprimand.

On June 24, 1982, based upon Moore's continued failure to improve his use of leave, the Agency amended the letter of instruction to continue in force and effect for an additional 6 months. On November 5, 1982, the Agency suspended Moore for 14 days effective November 15, 1982, for failing to provide medical certification for his use of sick leave on August 23, 1982, and for being AWOL without even having requested leave on August 25 and 26, 1982.[2]

Notwithstanding these three instances of disciplinary action, Moore failed to provide medical certification for his absences on January 20, 27 and 28, and February 3, 4 and 9, 1983. Accordingly, the Agency again charged Moore with being AWOL and insubordinate. Based upon these charges, on February 18, 1983 the Agency issued Moore a Notice of Proposed Removal. Moore responded on March 3, 1983.

After receiving the Notice of Proposed Removal, Moore persisted in his refusal to use his leave in accordance with Agency rules and regulations. On February 14 and 16, 1983, Moore requested and received approval to use sick leave, but once again failed to provide the required medical certification upon his return to work. Therefore, he was again charged with being insubordinate and AWOL. Finally, on March 1, 3, 14, 15 and 18, 1983, Moore failed to show up for work and neither requested leave nor submitted medical certification; the Agency added yet another charge of AWOL against him.

On March 24, 1983, the Agency issued Moore an Amended Notice of Proposed Re-

7703(c). Accordingly, we find Moore's argument without merit.

**2.** On January 25, 1983, the Agency once again extended the letter of instruction for an additional 6 months. Notwithstanding this amendment, the Agency issued Moore a new letter of instruction on February 11, 1983. The new

letter of instruction emphasized that Moore's leave record for the period from June 6, 1982 through February 11, 1983 was unacceptable, and warned Moore that if he failed to comply with its specifications, "appropriate disciplinary action *will* be taken." (Emphasis supplied.)

moval which included the most recent charges of AWOL and insubordination. Moore did not respond to the Amended Notice. On April 12, 1983, the Agency issued Moore notice of its decision to remove him from the Federal service, effective April 24, 1983.

The Board subsequently affirmed the Agency's decision after conducting a full hearing on the merits. Moore then petitioned this Court seeking judicial review of the Board's decision.

## II. DISCUSSION

Under the Administrative Procedure Act (the "Act"), the scope of judicial review to be applied to decisions of the Board is narrow. Section 7703(c) of the Act provides in pertinent part that:

> [T]he court shall review the record and hold unlawful and set aside any agency action, findings or conclusions found to be
>
> (1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>
> (3) unsupported by substantial evidence[.]

An agency action is arbitrary or capricious only if it lacks a rational basis. *Cowherd v. United States Department of Housing and Urban Development,* 827 F.2d 40, 42 (7th Cir.1987); *Young v. Hampton,* 568 F.2d 1253, 1257 (7th Cir.1977). In determining whether an agency's action is supported by substantial evidence, the court must decide if, "considering the record as a whole, the board's decision was unreasonable that the agency satisfied its evidentiary burden." *Naekel v. Department of Transportation,* 782 F.2d 975, 978 (Fed.Cir.1986). However, the mere fact that different conclusions can be drawn from the same evidence does not preclude the agency's action from being supported by substantial evidence. *Consolo v. F.M.C.,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966); *see Delgado v. Bowen,* 782 F.2d 79, 83 (7th Cir.1986).

The Agency contends that it is entitled to summary affirmance because: (1) there is substantial evidence of record establishing that Moore was guilty of the offenses with which he was charged; (2) the Agency accorded Moore all of the process to which he was entitled by law and regulation; and (3) there was a rational basis for the agency to conclude that Moore's removal would promote the efficiency of the service. Moore, unsurprisingly, challenges the Agency's motion on numerous grounds, none of which the Court finds persuasive.[3]

### A. *The Letter of Instruction*

■ Moore initially attacks the propriety of the Agency's decision to issue him a letter of instruction. In his appeal to the Board, Moore argued that the Agency improperly issued him a letter of instruction on the basis of his prior use of approved leave. *See, e.g., Le Flore v. United States Postal Service,* 10 M.S.P.B. 240, 240, 11 M.S.P.R. 277 (1982), *Webb v. United States Postal Service,* 9 M.S.P.B. 749, 752–53, 10 M.S.P.R. 536 (1982), and *Cade v. United States Postal Service,* 8 M.S. P.B. 362, 364, 8 M.S.P.R. 717 (1981). The Board, although observing that an agency may not take disciplinary action against an employee on the basis of approved leave, held that "the issuance of a letter of instruction is a *non-disciplinary* action because such issuance is not in and of itself a punishment for prior misconduct but relates prospectively to control future actions of the employee to whom it is directed." *Moore v. Defense Logistics Agency,* slip op. No. CH07528310465 at 5 (M.S.P.B. Feb. 19, 1985) (emphasis supplied). The Court agrees.

The law is well established that "an employee's prior use of approved leave may

---

**3.** The Court notes that a substantial portion of Moore's Memorandum in Opposition is an extremely acrimonious personal attack on opposing counsel. The Court will, of course, disregard such comment in arriving at its decision, but deems it necessary to warn Moore that such accusations are both unwarranted and inexcusable and will not be tolerated in future proceedings before this Court.

not constitute a ground for disciplinary action or [the] basis for increasing [a] penalty * * *." *Washington v. Department of Army*, 813 F.2d 390, 394 (Fed.Cir.1987). The term "disciplinary action," however, has not been so expansively construed as to include supervisory actions such as requiring an employee to provide medical certification of his use of sick leave. Rather, the rule has been applied in situations where an agency has attempted to take an *adverse action* (as set forth in chapter 75 of the Act) against an employee on the basis of his prior use of approved leave.

In its most common form, both the courts and the Board recognize that an employer may not remove an employee based upon his use of approved leave. *See e.g., Washington*, 813 F.2d at 394; *Bond v. Vance*, 327 F.2d 901, 902 (D.C.Cir.1964); *Le Flore*, 10 M.S.P.B. at 240, 11 M.S.P.R. at 278; *Webb*, 9 M.S.P.B. at 752–53, 10 M.S.P.R. at 542–43; *Cade*, 8 M.S.P.B. at 364, 8 M.S.P.R. at 720. The rationale underlying this rule is intimately bound up with the Act's requirement that an adverse action promote the efficiency of the service:

> [G]iven an agency's authority to deny leave under many circumstances when it must have the services of an employee, when an agency approve[s] an employee's request for leave, it thereby release[s] him * * * from the obligation to report for duty. Consequently, such an absence [can]not be considered to be a breach of the employer-employee relationship, and an adverse action based on a record of approved leave normally would not be deemed for such cause as [would] promote[ ] the efficiency of the service.

*Webb*, 9 M.S.P.B. at 752–53, 10 M.S.P.R. at 542–43, quoting *In re Francis A. Kibort*, Docket No. AR752B990 418 at 3–4 (June 29, 1979); 5 U.S.C. sec. 7513(a) (1980).

■ By approving an employee's request for leave, the agency effectively states that it does not require the employee's presence for its efficient operation; and the agency is estopped from claiming otherwise in a subsequent adverse action against the employee. This rationale logically extends to all of the adverse actions set out in chapter 75 of the Act (namely, suspension, removal, reduction in grade or pay, and furlough for 30 days or less). *See* 5 U.S.C. secs. 7512(1)–(5); *see also* 5 U.S.C. sec. 7502; 5 C.F.R. secs. 752.210(a) and 752.401(a) (1987). Since the adverse actions specified in sec. 7512 are exhaustive, (*Dreher v. United States Postal Service*, 711 F.2d 907, 909 (9th Cir.1983) (per curiam); *Williams v. Department of Army*, 651 F.2d 243, 244 (4th Cir.1981)), it could be argued that the *Kibort* rationale applies only to the adverse actions set out in the Act; and, by implication, that there is no restriction on an agency's ability to base *other* decisions or actions on an employee's prior use of approved leave.

Although this reasoning possesses some force, the Court is unwilling to restrict the rule's application to only those actions outlined in chapter 75 of the Act. The Court finds that there is a reason other than efficiency to prohibit an agency from taking punitive actions against an employee for his use of approved leave: fundamental fairness. It would be ironic indeed if an agency could, on the one hand, place its stamp of approval on an employee's actions, while, on the other hand, punishing him for doing so. Such actions are simply and utterly inconsistent and cannot be tolerated regardless of their effect on the agency's efficiency. Thus, the Court might extend the rule to disciplinary actions as specified in an agency's own regulations which include actions other than the statutory adverse actions (*e.g.*, reprimands).

Nevertheless, the Court concurs with the Board's conclusion that the term "disciplinary action" is not so broad as to encompass the act of requiring an employee to provide medical certification for his use of sick leave. An agency is entitled to make rules and regulations in order to facilitate its efficient operation, and to have its employees respect such rules and regulations in order to achieve that end. *Geisler v. Department of Transportation*, 3 M.S.P.B. 367, 369 (1980).

Here, the Agency is empowered to require an employee to submit medical certification for absences of 3 days or less if the Agency has reason to suspect that the employee is abusing his leave. *See* DCRI Reg. 1424.1, par. 4d. Requiring an employee to provide medical documentation of absences is neither an adverse action under sec. 7512 of the Act, nor, significantly, is it provided for in the Agency regulations which address disciplinary matters. Agency Reg. 1406.2 sets out four types of disciplinary actions which the Agency may initiate against an employee for misconduct: oral admonishment, reprimand, suspension, and removal. The regulation includes disciplinary actions other than those outlined in the Act. However, it does not include the act of requiring an employee to provide medical certification to corroborate his use of sick leave, which is clearly an appropriate supervisory action that allows the Agency, under appropriate circumstances, to monitor its employees' use of sick leave; and this Court declines to invalidate it through judicial fiat by declaring that it is "punitive" or "disciplinary" in substance.

■ Moore next claims that the Agency acted arbitrarily by issuing him the letter of instruction based solely upon the "suspicions" of his supervisor, Geraldine Pharr. (Moore's Mem., at 15).[4] We disagree. The record reveals that Ms. Pharr began to suspect that Moore was abusing his leave based upon the pattern in which he was using it, *viz.*, "a day here, a day there," as it accrued, on a regular basis. A.R. Vol. IV, at 212, 220. After her suspicion arose, Ms. Pharr patiently refrained from taking immediate action against Moore, and instead consulted her supervisor, Marie Hudson, about the appropriate course of action she should take. A.R. Vol. V, at 317–18.

Ms. Hudson advised Ms. Pharr to counsel Moore; and, in the event that Moore's use of leave did not improve, to issue him a letter of instruction. A.R. Vol. I (Jan.) at 72–75. Ms. Pharr subsequently discussed the situation with Moore, but his use of leave did not improve. Only then did the Agency issue Moore a letter of instruction. Given these circumstances, we cannot say that the Agency's action lacked a rational basis.

■ Moore raises another argument in support of his contention that the Agency improperly issued him a letter of instruction. Specifically, Moore argues that "the record shows numerous other employees at [the Agency] expended far in excess of what [Moore] expended, without their usage being construed as an 'abuse of leave.'" (Moore's Mem. at 16). The document upon which Moore relies in support of this argument is a melange of raw data consisting of other Agency employees' leave records. The Board found that these data were entitled to little weight because they did not take into account variables[5] which were essential to compare Moore's leave record with those of the other employees included in the document. The Court holds that the Board did not err by finding that these data were entitled to little weight.

In characteristic persistence, however, Moore asserts that it was the *Agency's* burden to rebut the *fact* that he was issued a letter of instruction while other employees, who had used more leave (as shown by the document), were not. Moore misses the mark completely. It was *Moore's* burden, not the Agency's, to establish that he was issued the letter of instruction under circumstances that would indicate that the Agency was treating him discriminatorily. *See* 5 C.F.R. 1201.56(b) (1987). The Board found, and we affirm, that Moore failed to sustain *his* burden. What Moore really invites the Court to do is to reweigh the evidence and reach a conclusion contrary to

4. Moore, at pages 20–21 of his Memorandum, challenges the veracity of the Agency's statement that he had been counseled about his use of leave prior to issuing him the letter of instruction. Given Moore's frank admission of this fact in his Response to the Agency's Notice of Proposed Removal (p. 2), the Court considers

his attack disingenuous at best and will not address it here.

5. *E.g.*, employment locations, names of the employees' supervisors, the length of their tenure, and, most importantly, the circumstances surrounding their leave usage.

the Board's. It is hornbook law, however, that a reviewing court "may not * * * reweigh the evidence or substitute its judgment for that of the administrative fact finder." *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir.1982). Accordingly, the Court declines Moore's invitation.

Moore also challenges the Board's finding that the Agency neither was nor should have been aware of the extent or severity of his stomach-related health problems prior to the date he was given the letter of instruction. Moore submitted four sets of medical records to the Board, which the Board considered in detail. The Board also reviewed numerous documents from the Agency's dispensary. Having considered all of these documents, the Board found that Moore did not present these hospitalization records to his supervisors or the dispensary personnel, and that knowledge of his condition could not be imputed to the Agency from these documents. The Court holds that the record supports the Board's findings.

Regarding Moore's claim that the Agency knew of his stomach-related problems through employee scuttlebutt, the Court considers it unnecessary to provide a lengthy recitation of the record evidence speaking to this issue. Rather, the Court deems it sufficient to state that the Board did not abuse its discretion by finding that such hearsay declarations were insufficient to put the Agency on notice of Moore's condition. Furthermore, even assuming that the Agency had learned of the *type* of Moore's injury, it in no way follows that it also learned of the *extent* of his injury; and there is no evidence in the record to suggest otherwise.

In sum, we sustain the Board's findings that the Agency had reason to suspect that Moore was abusing his sick leave, and that it did not act improperly by requiring Moore to provide certification of future absences. The record also contains substantial evidence, and Moore does not challenge it here, to support the Board's finding that the Agency proved each of the charges against Moore by a preponderance of the evidence.[6] *See* 5 C.F.R. secs. 1201.56(c)(1)–(2) (1987).

### B. *Affirmative Defenses*

Moore also raised several affirmative defenses below. *See* 5 U.S.C. sec. 7701(c)(2); 5 C.F.R. secs. 1201.56(b)(1)–(2) (1987). Specifically, Moore argued that the Agency: (1) removed him as a reprisal for filing various employment-related complaints; (2) removed him as a reprisal for failing to sign a statement which provided that another Agency employee was not a victim of unlawful discrimination; (3) discriminated against him on the basis of race; and (4), failed to provide him with proper notice of his proposed removal, thereby committing harmful procedural error.

With the exception of Moore's affirmative defense based on racial discrimination, which we do not address at this stage of the proceeding,[7] the Court upholds the Board's finding that Moore failed to establish each of these affirmative defenses.

■ The Board first considered Moore's allegations of reprisals, and determined that they were governed by 5 U.S.C. sec. 2302(b)(9).[8] Accordingly Moore had the burden of proving that: (1) he was engaged in a protected activity; (2) he was subsequently treated by the Agency in an ad-

---

**6.** Moore stipulated that he did not comply with the terms of the letter of instruction and failed to even request leave after he received the original Notice of Proposed Removal.

**7.** Under 5 U.S.C. Section 7703(c), Moore is entitled to a de novo trial on the issue of race discrimination.

**8.** Section 2302(b)(9) of the Act provides that: "Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority, take or fail to take any personnel

action against any employee * * * as a reprisal for the exercise of any appeal right granted by any law, rule, or regulation[.]"

Although it is unclear whether Moore's claim of reprisal for refusing to sign a statement concerning another employee falls under sec. (b)(9), the Court will assume for purposes of this motion that it is covered by (b)(9), (b)(10) or (b)(11). Regardless of which subsection of sec. 2302(b) applies, this is an affirmative defense which Moore bears the burden of proving. *See* 5 C.F.R. sec. 1201.56(b)(2) (1987).

verse manner; (3) the Agency had actual or constructive knowledge that Moore engaged in a protected activity; and (4), there was a genuine nexus between the protected activity and Moore's removal. *See, e.g. Dunning v. National Aeronautics and Space Administration,* 718 F.2d 1170, 1174 (D.C.Cir.1983).

The Board, although noting that the first three elements were satisfied, found that Moore failed to establish a causal nexus between the protected activity in which he was engaged and his removal. Specifically, and the Court believes properly, the Board found that there was no causal nexus between Moore's protected activity and his removal because Moore failed to adduce evidence sufficient to prove causation by a preponderance of the evidence.

Nevertheless, Moore contends that the board's finding with was erroneous: "How can there not be a 'causal connection' when an agency representative (Thomas Kelly) states 'If you don't sign this statement alleging that a Hispanic employee was not discriminated against, we'll make it rough for you,' especially when you consider that [Mr. Kelly] is the one-time supervisor of Richard Kraus, the personnel management specialist who reviewed the procedural adequacy of every action taken against me?" (Moore's Mem., at 31).

In his zeal to illuminate the Board's error, however, Moore neglects to state that Mr. Kelly testified without contradiction that he never made such a statement to Moore. A.R. Vol. IV, at 147–48. Given Kelly's testimony, the Court sustains the Board's finding that Moore did not establish a causal nexus between his protected activities and his removal.[9]

Moore's final affirmative defense is that the Agency committed harmful procedural error by issuing him an amended notice of proposed removal containing additional charges after he responded to the Agency's initial notice. The Court finds this argument without merit. Section 7703(c)(2) of the Act provides that an agency's decision must be set aside if the petitioner shows harmful error in the application of the agency's procedures in arriving at such decision.

In this case, the Agency issued Moore a Notice of Proposed Removal on February 18, 1983. The original Notice provided Moore with 15 days within which to respond and stated that "no action would be taken sooner than 30 days from" February 18, 1983. After Moore received the original Notice he accumulated an additional seven unexcused absences. On March 24, 1983, therefore, the Agency issued Moore an Amended Notice of Proposed Removal containing new charges based on his additional unexcused absences. The Amended Notice, like the original Notice, provided Moore with *15 days* within which to respond and stated that no action would be taken sooner than 30 days from March 24, 1983.

On April 12, 1983, after the 15–day response period had elapsed, the Agency informed Moore of its decision to remove him effective April 25, 1983: *31 days* after the Agency issued him the Amended Notice.[10] Therefore, the Court holds that the Agency acted in accordance with 5 U.S.C. sec. 7513(b)[11] and did not commit procedural error, let alone "harmful" procedural error.[12]

---

**9.** Moore does not elaborate upon the significance of Richard Kraus in his awkwardly stated theory of conspiracy, and the Court will not speculate about its import.

**10.** The fact that Moore received notice of the decision before the 30–day period passed does not serve to invalidate the Agency's action. *See Palmer v. United States,* 121 Ct.Cl. 415, 420–21 (1952).

**11.** Section 7513(b) of the Act provides that: "An employee against whom an action is proposed is entitled to—at least 30 days advance written

notice * * * stating the specific reasons for the proposed action", and at least 7 days within which to answer the notice.

**12.** The Court notes that Moore completely failed to address the second prong of the procedural error defense, namely, that the error was harmful. Moore sets forth no reasons that would justify the conclusion that, but for the error, the Agency's decision would have been different. *See* 5 C.F.R. sec. 1201.56(c)(3); *Martin v. F.A.A.,* 795 F.2d 995, 997 (Fed.Cir.1986).

## C. *Efficiency of the Service*

 We also uphold the Board's finding that there was a rational basis for the Agency to conclude that Moore's removal would promote the efficiency of the service. 5 U.S.C. sec. 7513(a). In order to satisfy this requirement, the Agency must "show by a preponderance of the evidence that [Moore's] misconduct is likely to have an adverse effect upon the [A]gency's functioning." *Mings v. Department of Justice,* 813 F.2d 384, 389–90 (Fed.Cir.1987). It is well settled that unauthorized absences are inherently disruptive to an agency's efficiency. *See e.g., Davis v. Veteran's Administration,* 792 F.2d 1111, 1112–13 (Fed. Cir.1986); *Desiderio v. Department of Navy,* 4 M.S.P.B. 171, 171 (1980). Since the Agency proved its charges of unauthorized absence against Moore, it follows that the Board properly found that his removal would promote the efficiency of the service.

## D. *Penalty*

Finally, the Court addresses the issue of whether the penalty of removal was appropriate under these circumstances. Courts are exceedingly reluctant to become entangled in the disciplinary process and therefore defer to the sound discretion of the agency. *Carosella v. United States Postal Service,* 816 F.2d 638, 643 (Fed.Cir.1987). Therefore, a reviewing court may set aside a penalty "only if it is * * * so harsh or disproportionate so as to constitute an abuse of discretion." *Graybill v. United States Postal Service,* 782 F.2d 1567, 1574 (Fed.Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986). In light of this deferential standard of review, and in light of Moore's persistent refusals to respect the Agency's rules and regulations, the Court holds that the penalty of removal was not unreasonable.[13]

## III. CONCLUSION

In conclusion the Court holds that: (1) there is substantial evidence of record establishing that Moore had committed the offenses with which he was charged; (2) Moore received all of the process to which he was entitled; (3) there was a rational basis for the Agency to conclude that Moore's removal would promote the efficiency of the service; and (4) the penalty of removal was not unreasonable. Accordingly, the Agency's Motion for Summary Affirmance is GRANTED.

---

**13.** Moore has not resurrected his argument to the Board that the Agency erred by improperly considering his prior disciplinary record; therefore, the Court will not address it.