837 F.2d 1096
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Herman W. MARSHALL, Petitioner,
v.
UNITED STATES POSTAL SERVICE, Respondent.
 No. 87-3383.
 United States Court of Appeals, Federal Circuit.
 Dec. 7, 1987.
 
 Before RICH and DAVIS, Circuit Judges, and NICHOLS, Senior Circuit Judge.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 The decision of the Merit Systems Protection Board in Docket No. SL07528610279, sustaining petitioner Herman Marshall's removal for sexual harassment, is affirmed.
 
 OPINION
 
 2
 The Postal Service has defined sexual harassment in its Postal Bulletin No. 21404, dated May 19, 1983, at page 19. The Notice of Proposed Adverse Action to petitioner recited this definition, as did the Letter of Decision informing petitioner of his removal. Thereafter, the Postal Service's definition of sexual harassment disappears. The administrative judge nowhere mentions it. Neither do the parties. Instead, all rely on cases interpreting Title VII of the Civil Rights Act of 1964, 42 USC 2000e-2000e-17 (1982) and the Equal Employment Opportunity Commission's Guidelines on Discrimination Because of Sex, 29 CFR 1604.11 (1986).
 
 
 3
 We accept the premise that the Postal Service meant to prohibit by its Bulletin No. 21404 the same type of harassment which is addressed in the EEOC guidelines cognate to Title VII. We think it is well to remember, however, that the agency may proscribe conduct which does not rise to the level of a Title VII violation. As this court explained in Carosella v. U.S. Postal Service, 816 F.2d 638 (Fed.Cir.1987):
 
 
 4
 The right or opportunity for a victim of sexual harassment to seek redress under Title VII has no bearing on the right of an employer to establish reasonable rules governing the workplace....
 
 
 5
 ....
 
 
 6
 ... An employer is not required to tolerate the disruption and inefficiencies caused by a hostile workplace environment until the wrongdoer has so clearly violated the law that the victims are sure to prevail in a Title VII action. The agency need show only that "the employee's misconduct is likely to have an adverse effect upon the agency's functioning." Mings v. Department of Justice, 813 F.2d 384, 389 (Fed.Cir.1987).
 
 
 7
 Carosella, 816 F.2d at 642-43 (other citations omitted). Thus, although Title VII cases provide a useful reservoir of experience to guide our decision-making process, they are only persuasive authority. Carosella makes clear that the proper focus is on the efficiency of the service, and not on any putative violation of Title VII.
 
 
 8
 The administrative judge found that petitioner was engaged in "hostile environment" sexual harassment: sexual discrimination which creates an intimidating, hostile, or offensive working environment. See Meritor Savings Bank v. Vinson, --- U.S. ----, ----, 106 S.Ct. 2399, 2405-06, 91 L.Ed.2d 49, 59 (1986). Cases in this area have required that the harassment, to be actionable, must be sufficiently severe and persistent to affect seriously the psychological well-being of the employee. Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir.1982), cited with approval, Meritor, 106 S.Ct. at 2406; Downes v. Federal Aviation Administration, 775 F.2d 288, 292 (Fed.Cir.1985). Petitioner asserts that the finding of hostile environment harassment cannot stand because the administrative judge overlooked the requirement that the conduct be sufficiently severe and persistent to seriously affect the psychological well-being of complainant Barks.
 
 
 9
 We do not agree that the administrative judge "overlooked" this requirement. He made the following findings on this point:
 
 
 10
 I find that the offensive conduct by the appellant was sufficiently pervasive as to alter the conditions of Barks' employment and to affect her psychologically. The record clearly demonstrates that Barks was repeatedly caught between the pendulum swings of the appellant's promises to her of favors and his threats of disciplinary action. She also testified that the appellant's unwanted attentions embarrassed and humiliated her. Tr. 25. It is also clear that the attention and favoritism shown by the appellant to Barks at least temporarily alienated her fellow employees.
 
 
 11
 It is true that the first sentence of the above quotation omits the word "seriously" after "affect," as it is found in Downes, 775 F.2d at 292, and other authorities. However, the language and structure of this sentence otherwise mirror that found in Downes and we think the administrative judge was in fact averring to the "serious psychological effect" requirement when he made the above findings.
 
 
 12
 The issue thus reduces itself to one of the sufficiency of the evidence. In her written statement to the postal inspectors, Barks recounted that petitioner would gyrate on the one hand between threatening her with charges of insubordination, and promising on the other to leave her alone in the future. On this same point, Barks' clear testimony was that on some days petitioner would be threatening, and that on other days he would ask her what he could do to make her love him. This situation became "worse and worse," Barks testified, to the point where she felt her job was in danger if she didn't "go along." She testified that she felt as if she were "walking a tightrope." Thus, there was sufficient evidence to find that Barks found herself caught between what the administrative judge called "pendulum swings" of promises and threats from petitioner. Also, Barks testified more than once that she was embarrassed and humiliated by petitioner's undesired attentions. And substantial evidence supports the finding that petitioner's overweening interest in Barks led other employees to avoid being seen with her. In view of all this, we cannot say that the administrative judge's finding of the requisite psychological effect was unsupported by substantial evidence.
 
 
 13
 Petitioner mounts a challenge to the finding of nexus, but falls short of the mark. Whether phrasing the idea in terms of a presumption or otherwise, courts have recognized that there are some instances of misconduct where the connection between the misconduct and the efficiency of the service is self-evident. Hayes v. Dept. of the Navy, 727 F.2d 1535, 1539 (Fed.Cir.1984); Snipes v. U.S. Postal Service, 677 F.2d 375, 377-78 (4th Cir.1982). Over an eight month period, petitioner pressed his attentions on Barks through conversation, notes and letters, and physical advances. Petitioner knew that his advances were unwelcome. Instead of accepting this fact, he abused his supervisory position in an attempt to force the issue. We conclude that the nexus between petitioner's sexual harassment of Mrs. Barks and the efficiency of the service is obvious on the face of these facts. Indeed, that Congress in Title VII has gone so far as to make sexual harassment as there defined a crime makes clear that sexual harassment is deemed unacceptable in the workplace. We are unwilling to say that the Postal Service, which has defined sexual harassment in terms similar to those found in the EEOC guidelines on Title VII, lacked a rational basis for finding the required link between petitioner's misconduct and the efficiency of its service.
 
 
 14
 Petitioner was removed for his misconduct. The penalty is a harsh one, given his forty years of otherwise good service. Sexual harassment, however, is a serious form of misconduct. After carefully reviewing the administrative judge's findings in this regard, we hold that the agency did not overstep its discretion when it assessed the penalty of removal against petitioner.
 
 
 15
 We need not stop to consider the alternative finding of quid pro quo sexual harassment, because we affirm on the basis of the finding of hostile environment harassment. We have carefully reviewed petitioner's other contentions and find them to be insubstantial. The agency's action is affirmed as it is not arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence or otherwise not in accordance with law. 5 USC 7703(c).
 
 
 16
 NICHOLS, Senior Circuit Judge, concurring.
 
 
 17
 I concur in the result. It seems obvious to me that petitioner Marshall harassed complainant Barks by offering promotion and other benefits in return for sexual favors, and threatened her with demotion and other detriments such as "counselling" when she persisted in refusal. The findings support this conclusion and the employer Postal Service had its rule of conduct which prohibited what Marshall, in his reckless infatuation, did. This is quid pro quo harassment by any standard. Therefore, I would affirm on the ground of quid pro quo harassment, the first ground on which the administrative judge made his decision.
 
 
 18
 On the other hand, I am totally befogged as to what "hostile environment" harassment means in the instant context. The Supreme Court in Meritor Savings Bank v. Vinson (slip op. June 19, 1986) draws a parallel between "hostile environment" harassment against women and conduct traditionally called discrimination as against blacks, hispanics, and other minorities, where race, not sex, is the basis of the hostile attitude. You might say it is insufficiently amorous conduct where that of Marshall was excessively amorous. It is conduct of persons who do not want the protected race or gender as fellow employees, or as subordinates. If Marshall in any literal sense at all created a hostile environment for complainant Barks, it was by arousing hostility towards her on the part of third-party Postal employees who resented his apparent disposition to grant her preference and favors they did not share. I can't help reading some of our and other lower court opinions as holding that the annoyance and mental distress caused by an over-amorous supervisor may of itself constitute a hostile environment, as much as an under-amorous attitude would do, and one might have to resort to such a theory if, unlike here, the supervisor offered nothing in return, or if he engaged in objectionable behavior such as fanny-pinching, which would anticipate no reciprocity. Here we don't need it.
 
 
 19
 It seems to me our problem is we know what behavior women employees should be protected against in the workplace, but we don't know how to define it, and have failed to do so in our published cases. Perhaps other courts, in cases not brought to our attention, have done better. In the absence of clear definitions, it appears to me we should stick to the short path and affirm the board where it is easy to do so, not on its finding that an ill-defined offense was also somehow committed.