62 F.3d 1430
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Dennis R. PRIVETTE, Petitioner,
v.
DEPARTMENT OF the AIR FORCE, Respondent.
 No. 94-3619.
 United States Court of Appeals, Federal Circuit.
 May 15, 1995.
 
 Before ARCHER, Chief Judge, NEWMAN, and PLAGER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Dennis R. Privette ("Petitioner") appeals the Merit Systems Protection Board's (MSPB or Board) decision, Docket No. CH-0752-93-0312-B-1, upholding his removal as a Police Officer at the Selfridge Air National Guard Base in Michigan for insubordinate defiance of authority and disregard of directives. We affirm.
 
 BACKGROUND
 
 2
 When Petitioner was hired as a police officer at the Selfridge Base in 1988, it was the practice of Selfridge officers to arrest civilians for on-base offenses and "lodge" them in the county jail until they were charged and could post bail. In 1991 base officials learned that Selfridge police officers lacked authority to arrest civilians; they could only "detain" civilians for release to civilian police officers authorized to charge such civilians, or transport them to appropriate state or federal authorities. As a result, on October 17, 1991, Captain Stringer, Petitioner's superior, issued OPS (Operations) Bulletin 91-10, which stated:
 
 
 3
 Effective immediately we will no longer "lodge" anyone at an off-base lock-up for any reason. Drunk drivers will be released to someone or held on the bar [sic, base?] until sober. People being held on one of our warrants by an outside agency will be released if they cannot post bond. (emphasis in original)
 
 
 4
 This memo was attached to the general clipboard in the officers' squad room for review by the officers. Roughly one month after it issued, the memo was modified to permit officers to arrest and lodge civilians for whom warrants had already been issued, i.e. cases already "in the pipeline."
 
 
 5
 Petitioner disagreed with the proposition that base police officers could not arrest and lodge persons committing serious offenses on the base, asserting that Michigan law, rather than military regulations, controlled their authority and permitted such actions. In June 1992, he attended a meeting between the United States Attorney for Michigan, the Assistant Judge Advocate Major Culbert, and the base's Deputy Commander for Support Colonel Millben, on the issue of arrest and prosecution of civilians by base police officers. At that meeting, Petitioner was instructed that police officers could not arrest or lodge civilians for any reason, although Petitioner insisted that they had such authority under Michigan law. Major Thiessen, the base's Chief of Security Police, reiterated to Petitioner in September 1992 that military regulations rather than Michigan law governed the police officers' authority.
 
 
 6
 The issue of arrest and lodging of civilians was a main focus of an October 28, 1992 staff supervisors' meeting, which was attended by Petitioner and several other base police officers, as well as Major Thiessen and Captain Stringer, Petitioner's superior. Major Thiessen read a detailed legal opinion issued by the Assistant Judge Advocate, Major Culbert, explaining why Air Force security police lacked authority to arrest civilians. As discussed further below, the record contains conflicting testimony regarding a discussion at the end of the meeting on whether police officers could still arrest and lodge for serious, e.g. violent, offenses, and the proper procedures for doing so.
 
 
 7
 On November 27, 1992, Petitioner arrested the civilian spouse of a woman visiting a friend on the base, in response to the wife's complaint that her husband had physically abused her and threatened to kill her. Petitioner lodged him in the local jail. Three days later, without prior approval from the Deputy Commander for Support, he sought a warrant from the local prosecutor to prosecute the husband.
 
 
 8
 On February 23, 1993, Captain Stringer, Petitioner's superior, removed Petitioner for insubordinate defiance of authority and disregard of directives precluding arrest and lodging of civilians and requiring approval from the Deputy Commander for Support before initiating an off-base prosecution. Petitioner appealed his removal to the Board. An Administrative Judge (AJ) upheld his removal on appeal, finding that the agency had proven by a preponderance of the evidence that Petitioner had known on November 27, 1992 of the rules prohibiting arrest and lodging of civilians and the requirement that he clear off-base prosecutions with Colonel Millben's office. The AJ found that Petitioner had attended and actively participated in the October 28, 1992 meeting, and that Major Thiessen had read Major Culbert's legal opinion, which made no exception for "serious" crimes. Further, the meeting's minutes stated that Major Thiessen had said that base police officers could only detain, and not arrest, civilians. The AJ stated that "[b]ased on the evidence of discussion during the [October 28] staff meeting alone, I find that [Petitioner] knew that he was not to arrest or lodge civilians for any offense. He could not have reasonably believed otherwise." The AJ went on, however, to consider testimony from Petitioner, Majors Thiessen and Culbert, Captain Stringer, and Colonel Millben concerning the June 1992 and September 1992 meetings discussed above, finding the four agency witnesses more credible than Petitioner. The AJ concluded that the preponderance of the evidence supported the agency's charges with respect to arrest and lodging. The AJ further found that the preponderant evidence supported the charge that Petitioner knew he had to clear off-base prosecutions with Colonel Millben's office.
 
 
 9
 The AJ rejected Petitioner's defense that the agency committed harmful procedural error because Captain Stringer was unduly influenced by his superior, Major Thiessen, in removing Petitioner. The AJ found that even if Major Thiessen had erred in making certain comments to Captain Stringer or others prior to removal, Petitioner had not shown that Captain Stringer would have decided differently absent those comments.
 
 
 10
 Finally, the AJ found that despite his otherwise excellent performance record, removal was appropriate in this case because Petitioner's conduct constituted a serious transgression that directly related to his assigned duties, and law enforcement officers are held to a higher standard of conduct than other employees, citing Jones v. Department of the Army, 52 M.S.P.R. 501 (1992).
 
 
 11
 The full Board granted Petitioner's petition for review, affirming all of the AJ's findings except those concerning the undue influence defense.[1] The Board found that the AJ erred in not resolving conflicting testimony on whether improper remarks were made and if so, what their impact was on Petitioner's removal. The Board remanded for credibility findings on this issue. On remand, the AJ found the testimony of agency witnesses, that Captain Stringer had made the decision on his own, more credible than that of Petitioner's witnesses. The Board summarily affirmed this decision.
 
 
 12
 This appeal followed.
 
 DISCUSSION
 
 13
 We review the Board's decision to determine whether it was (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c) (1988). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion ... tak[ing] into account whatever in the record fairly detracts from its weight.' " Perske v. Office of Personnel Management, 25 F.3d 1014, 1019 (Fed.Cir.1994) (quotation omitted).
 
 
 14
 The record in this case contains substantial evidentiary support for the fact that Petitioner knew of the prohibition against arresting and lodging civilians for any offense, including serious offenses. In particular, the Board's findings concerning the June and September 1992 meetings, including especially the Board's credibility determinations concerning Majors Culbert and Thiessen, Captain Stringer, and Colonel Millben, are supported by record evidence and entitled to deference. Carosella v. United States Postal Service, 816 F.2d 638, 641 (Fed.Cir.1987).
 
 
 15
 Petitioner asserts that the Board's decision is not supported by substantial evidence in light of affidavits and testimony offered by Petitioner in support of his assertion that he did not know that the "no arrest or lodging" policy applied to serious offenses. The record contains eight affidavits of police officers and other personnel attending the October 28, 1992 staff supervisors' meeting, which state that Petitioner asked at the October 28 meeting whether police officers lacked authority to arrest and lodge for serious offenses as well as for drunk driving. The affidavits further state that Captain Stringer instructed the police officers to use their own discretion in such circumstances and handle each case individually, and told the officers not to call Captain Stringer or Major Thiessen for guidance when they were off-duty. Two police officers also testified before the Board to this effect.
 
 
 16
 Clearly, if this evidence were credible, it would support Petitioner's assertion that he did not know he was violating base rules by arresting and lodging a serious offender; Petitioner conceivably could have considered himself able to make a "judgment call" on whether to arrest and lodge the offender picked up on November 27, 1992. Credibility determinations, however, are for the finder of fact, and are not for this court to remake under the guise of review for substantial evidence. Carosella, 816 F.2d at 641. The Board obviously did not accord to Petitioner's evidence on the October 28 meeting sufficient credibility to overcome the substantial evidence to the contrary, which included testimony by Major Thiessen, whom the Board found to be credible, that he did not recall the conversation alleged by Petitioner's witnesses.
 
 
 17
 Accordingly, we conclude that the Board's finding, that Petitioner knew he was violating the "no arrest or lodging" policy, is supported by substantial evidence. We note, however, that review of this case would have been facilitated by closer adherence by the Board to its obligation to make findings of fact and conclusions of law "upon all the material issues of fact and law presented on the record." 5 C.F.R. Sec. 1201.111(b)(1) (1994). As the Board recognized, Petitioner's knowledge concerning the "no arrest or lodging" policy was a key fact issue in this case. Its conclusion on this issue would have been further supported by specific findings regarding the evidence offered by the Petitioner, which directly conflicts with the agency's evidence.
 
 
 18
 We have considered Petitioner's other arguments, including his challenge to the substantiality of the evidence regarding his knowledge of the requirement to clear off-base prosecutions through Colonel Millben's office, and find them without merit.
 
 CONCLUSION
 
 19
 The decision of the Board is affirmed.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The Board also noted Petitioner's defense that the agency denied him minimum due process by not providing, until shortly before the pre-hearing conference, evidence in support of his removal. The Board refused to consider this defense, however, because Petitioner had not presented it to the AJ. See 5 C.F.R. Sec. 1201.24(b) (1994)