11 F.3d 1070
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Renee G. ANDERSON, Petitioner,
v.
DEPARTMENT OF DEFENSE, Respondent.
 No. 92-3291.
 United States Court of Appeals, Federal Circuit.
 Oct. 15, 1993.
 
 Before ARCHER, MICHEL and CLEVENGER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Renee G. Anderson petitions for review of the decision of the Merit Systems Protection Board (MSPB or Board), Docket No. SF0752920796-I-1, that sustained the personnel action of the Department of Defense removing petitioner from the position of Quality Assurance Specialist Intern for falsification of an official document. We affirm.
 
 
 2
 In April, 1991, after over six years of employment with Department of Defense, Defense Logistics Agency, Defense Contract Management Command (DOD), Ms. Anderson was assigned to work as a Quality Assurance Specialist (QAS) Intern in the Quality Assurance Division (QAD). QASs are mainly responsible for inspecting shipments of products for compliance with contractual requirements. Specifically, Ms. Anderson worked with the QASs responsible for overseeing production and shipment at Hi Shear Technology Corporation (Hi Shear) of various explosive devices for use in NASA's Space Shuttle program. Class C explosives serve flight safety operations in releasing spent fuel tanks after lift-off and in blowing various hatches and wings off the Shuttle during space flight emergencies. Inspection of the packaging for shipment is thus a critical responsibility due to the explosives' fragility.
 
 
 3
 QAD procedure requires that each shipment of explosives be acknowledged with a DOD Material Inspection and Receiving Report (DD Form 250) signed by a QAS. Such signature certifies, inter alia, that the explosives shipment has been accepted and that the items have been inspected for conformity with the pertinent contractual requirements.
 
 
 4
 On October 24, 1991, Ms. Anderson's QAS supervisor, Ms. Teresa Rice, was unavailable to perform her normal duties due to another work-related assignment. Having anticipated her absence, Ms. Rice had left specific instructions before her departure as to the proper procedure for handling a DD Form 250 during her absence. It is undisputed that Ms. Anderson was not authorized to sign a DD Form 250, either with her own signature or with that of another person.
 
 
 5
 During Ms. Rice's absence, a Hi Shear representative presented Ms. Anderson with a DD Form 250 requiring the signature of a QAS. Evidence supports the fact that the Hi Shear representative contemporaneously questioned Ms. Anderson's authority to sign the DD Form 250. Nevertheless, ignoring the instructions left by Ms. Rice, Ms. Anderson dated and signed the DD Form 250 with Ms. Rice's name, thereby acknowledging that "ACCEPTANCE of listed items has been made by [the signer] or under [the signer's] supervision and [that the explosive items] conform to the contract except as noted herein or on supporting documents." It is undisputed that the package was not inspected for compliance with the contract. When she returned the following day, Ms. Rice questioned Ms. Anderson's conduct in the matter and requested that she retrieve the explosive material. The material, however, had already been shipped without inspection.
 
 
 6
 After a thorough investigation into the matter, DOD charged Ms. Anderson with falsification of an official document and proposed that she be removed from her position. After receiving her response to the proposed personnel action, and based on the evidence of record, the deciding official, Mr. Prendergast, Chief, Programs and Systems Management Division for Quality Assurance, notified Ms. Anderson of her removal from federal service, effective June 12, 1992. Ms. Anderson timely appealed DOD's action to the MSPB.
 
 
 7
 On October 30, 1992, the Administrative Judge (AJ) issued an initial decision affirming DOD's action on several grounds. First, the AJ sustained the falsification charge. A charge of falsification requires proof by preponderant evidence that the petitioner supplied false information with the intent to deceive the agency involved. Naekel v. Department of Transp., 782 F.2d 975, 977 (Fed.Cir.1986). Intent may be inferred from circumstantial evidence when a misrepresentation was made with a reckless disregard for the truth. Tucker v. United States, 624 F.2d 1029, 1033 (Ct.Cl.1980). In concluding that intent had been established, the AJ found unworthy of belief Ms. Anderson's testimony that she signed the document mistakenly thinking that it was an internal shipping form, and concluded that Ms. Anderson knew that she was signing the DD Form 250. The AJ also weighed, inter alia, the fact that Ms. Anderson could not provide any documentation supporting her allegation that she had previously been permitted to sign Ms. Rice's name to other official documents.
 
 
 8
 In sustaining DOD's charge, the AJ rejected Ms. Anderson's affirmative defense that, inter alia, the personnel action was an impermissible reprisal for her previously filed Equal Employment Opportunity (EEO) complaint regarding her minimally successful employment rating. The AJ concluded that she had failed to establish a "prima facie case of reprisal" due to her failure to introduce any evidence indicating that Mr. Prendergast, as the deciding official, was even aware of the EEO complaint. Citing Gerlach v. Federal Trade Comm'n, 9 M.S.P.R. 268, 275-76 (1981), the AJ further ruled that "[e]ven assuming a prima facie case has been shown, [Ms. Anderson] has still failed to present any evidence to show that a retaliatory motive was a substantial factor in taking the action."
 
 
 9
 Finally, considering the factors articulated in Douglas v. Veterans Admin., 5 M.S.P.R. 280, 305-06 (1981), as did Mr. Prendergast, the AJ sustained the penalty of removal for the falsification charge as "within the bounds of reasonableness," and as promoting the efficiency of the federal service. 5 U.S.C. Sec. 7513 (1988). This initial decision became final upon the full Board's March 15, 1993 order denying her petition for review of the initial decision. 5 C.F.R. Sec. 1201.113(b) (1993). Ms. Anderson then timely appealed to this court.
 
 
 10
 We review the Board's decision under a narrow standard and must affirm unless the decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c) (1988).
 
 
 11
 None of Ms. Anderson's various arguments on appeal are sufficient to disturb the AJ's decision on the issue of intent, and therefore of falsification. It is undisputed that Ms. Anderson was fully informed of the proper procedures to be followed in accepting a shipment of explosives. It is also undisputed that neither she, nor anyone at her direction, performed the requisite inspection of the packaged explosives, even though she certified by signing the form that "[the items] conform[ed] to the contract." Further, it is undisputed that she did not have the authority to sign the form for Ms. Rice, the supervisory QAS. At the very least, then, Ms. Anderson's signing Ms. Rice's name on the DD Form 250 deceived the DOD, and for that matter all other parties relying on the form, into thinking that Ms. Rice had inspected the shipped explosives and had found them in full conformity with the contractual requirements. Moreover, under the circumstances as evidenced in the record, substantial evidence supports the AJ's finding that Ms. Anderson intended to create this deception. Ms. Anderson's failure to conceal the fact that she had signed the form, while relevant, is insufficient to overcome the substantial evidence underlying the finding of intent. Finally, Ms. Anderson's argument that she simply exceeded her authority by making a mistake is to no avail. Her testimony regarding her mistake was found to be unworthy of belief. As we have previously stated, a determination of credibility is "virtually unreviewable," Hambsch v. Department of Treasury, 796 F.2d 430, 436 (Fed.Cir.1986), and will not be disturbed unless it is "inherently improbable or discredited by undisputed fact," Carosella v. United States Postal Serv., 816 F.2d 638, 641 (Fed.Cir.1987). No such ground is present in this case to warrant rejection of the AJ's credibility determination.
 
 
 12
 On the record before us, we also must affirm the Board's determination that Ms. Anderson failed to establish a prima facie case of reprisal. Ms. Anderson had the burden of supplying evidence to the MSPB to support her allegations. Having given her the opportunity to do so, the AJ ruled that Ms. Anderson had "failed to submit any evidence" to show that Mr. Prendergast was even aware of the EEO complaint, and therefore rejected her affirmative defense. For the first time on appeal, Ms. Anderson includes in her reply brief documentation that would support her argument below. Sitting as an appellate court, however, we do not review evidence not before the Board during the administrative hearing. See Oshiver v. Office of Personnel Management, 896 F.2d 540, 542 (Fed.Cir.1990); Rockwell v. Department of Transp., Fed. Aviation Admin., 789 F.2d 908, 913 (Fed.Cir.1986).
 
 
 13
 Even though to do so is unhelpful to Ms. Anderson due to her failure to establish a prima facie case of reprisal, we nevertheless note that the Board in reaching its alternate holding--that even if a prima facie case had been established, Ms. Anderson nevertheless could not prevail--applied an incorrect legal standard by stating that she must prove that the retaliatory motive was a significant or substantial factor in the action taken. The Whistleblower Protection Act of 1989, Pub.L. No. 101-12, 103 Stat. 16 (codified at various sections of 5 U.S.C.) (WPA), requires only that a petitioner demonstrate that her protected disclosure played a role in, or was "a contributing factor" to, the personnel action taken. 5 U.S.C. Secs. 1214(b)(4)(B)(i) & 1221(e)(1) (Supp. III 1991); see Marano v. Department of Justice, No. 92-3132, slip op. at 5-7 (Fed.Cir. Aug. 4, 1993) (previous caselaw requiring that petitioner prove that protected activity constituted a "substantial" or "motivating" factor superseded by WPA).
 
 
 14
 Finally, we have discovered no ground on which to upset the Board's determination, after proper review of the penalty imposed, that removal was within the bounds of reasonableness for a first-time offense of falsification of an official document. The penalty imposed was not based solely on the potential harm to the Space Shuttle program, nor was it based on Ms. Anderson's failure to follow instructions. Rather, it was based on the sustained serious charge of falsification of a government document. DOD in this case did not abuse its substantial discretion in removing Ms. Anderson from her position as QAS Intern. See Beard v. General Servs. Admin., 801 F.2d 1318, 1321-22 (Fed.Cir.1986); Carosella, 816 F.2d at 643 (Board's affirmance of agency's choice of penalty will not be disturbed unless the agency's choice is so harsh as to exceed its discretionary authority).
 
 
 15
 Having fully considered all of Ms. Anderson's other arguments on appeal, we find nothing in the record before this court that compels reversal of the Board's decision. Accordingly, the decision of the MSPB is affirmed.