**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| NAVIN KALICHARAN,<br>　　　　　Appellant,<br><br>　　　　v.<br><br>DEPARTMENT OF JUSTICE,<br>　　　　　Agency. | DOCKET NUMBER<br>NY-0752-16-0167-I-4<br><br><br>DATE: July 20, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Lawrence Berger</u>, Esquire, Glen Cove, New York, for the appellant.

<u>Chad Y. Tang</u>, Esquire, and <u>Leslie A. Saint</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1　　The agency has filed a petition for review, and the appellant has filed a cross petition for review of the initial decision, which sustained the charge of violating the agency's use of deadly force policy and mitigated the penalty of removal to a 60-day suspension. *Kalicharan v. Department of Justice*, MSPB

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Docket No. NY-0752-16-0167-I-4, Appeal File (I-4 AF), Tab 28, Initial Decision (ID). For the reasons discussed below, we GRANT the petition for review, DENY the cross petition for review, AFFIRM the initial decision insofar as it found that the agency proved its misuse of weapon charge, and REVERSE the initial decision insofar as it mitigated the penalty of removal.

## BACKGROUND

¶2 The appellant was employed by the Federal Bureau of Investigation (FBI) of the Department of Justice (DOJ) as a special agent. *Kalicharan v. Department of Justice*, MSPB Docket No. NY-0752-16-0167-I-3, Appeal File (I-3 AF), Tab 14 at 31. On July 18, 2012, he witnessed from a window on the second story of his home an individual breaking into his wife's vehicle, which was parked in front of their house. *Id*. at 33. He reportedly shouted at the individual at least three times to step away from the vehicle, but the individual did not respond. *Id*. The appellant left the window area, retrieved his agency-issued firearm, and returned to the window to display the weapon for the individual to see, announcing himself as a law enforcement officer. I-3 AF, Tab 14 at 34, Tab 15 at 77. According to the appellant, as soon as he announced himself as a law enforcement officer, the individual turned towards him and dropped his left arm toward his waist. I-3 AF, Tab 14 at 44-45. The appellant then fired one round from his agency-issued firearm to stop the apparent threat.[2] *Id*. at 45.

¶3 The shooting was investigated by the New York Police Department (NYPD) and the Queens District Attorneys' Office (QDAO). I-3 AF, Tab 14 at 88-98, Tab 16 at 35. The DOJ Civil Rights Division (DOJ CRD) and the United States Attorneys' Office for the Eastern District of New York (USAO EDNY) also

---

[2] The appellant's shot hit the suspect on the right side of his lower back. I-3 AF, Tab 14 at 33. Although the suspect claimed that he was running away when the appellant shot him, *id*. at 94, there was no evidence to support that claim, as a reenactment of the scene and ballistic testing supported the appellant's version of events, *id*. at 94-97.

investigated the incident. I-3 AF, Tab 16 at 35, 41. The QDAO, DOJ CRD, and USAO EDNY all declined prosecution. I-3 AF, Tab 14 at 33, Tab 16 at 10, 31. Additionally, the agency's Shooting Incident Review Group (SIRG), an independent review committee that investigates all FBI shooting incidents to evaluate the use of deadly force, I-3 AF, Tab 15 at 273, Tab 16 at 19-236, and the Office of Inspector General (OIG) performed administrative investigations, I-3 AF, Tab 15 at 69-250. The OIG investigation included a compelled interview of the appellant under oath. *Id*. at 77-78.

¶4      The SIRG and, subsequently, the OIG investigations determined that the appellant violated the agency's use of deadly force policy, finding that there were insufficient facts to show that it was reasonable for the appellant to believe that the suspect posed imminent danger of death or serious bodily injury to the appellant or his family. I-3 AF, Tab 15 at 73, Tab 16 at 12, 35, 40. The OIG referred the matter to the FBI's Office of Professional Responsibility (OPR) for possible administrative action. I-3 AF, Tab 15 at 68.

¶5      On April 15, 2015, OPR issued a Report of Investigation (ROI) finding that the appellant did not comply with the agency's use of deadly force policy and recommending that the appellant be dismissed from the rolls of the FBI. I-3 AF, Tab 14 at 134. On May 8, 2015, a Chief of Adjudication at OPR issued the appellant a proposed notice of removal on four charges: (1) misuse of weapon—intentional discharge; (2) unprofessional conduct—off duty; (3) violation of miscellaneous rules/regulations; and (4) lack of candor/lying—no oath. *Id*. at 102-130. The appellant responded orally and in writing. *Id*. at 48-51, 67-81.

¶6      On December 8, 2015, the Assistant Director of OPR issued a final decision to remove the appellant from his position, sustaining charges one and four, but finding charges two and three to be unsubstantiated. *Id*. at 32, 52-60. In the penalty determination analysis, the deciding official found the appellant's refusal to accept responsibility, his prior discipline regarding the loss of a weapon, and

his refusal to cooperate in the investigations to be aggravating factors. *Id*. at 61-63. The appellant's removal was effective December 28, 2015. *Id*. at 31.

¶7     On January 25, 2016, the appellant filed an appeal with the Board. *Kalicharan v. Department of Justice*, MSPB Docket No. NY-0752-16-0167-I-1, Initial Appeal File (IAF), Tab 1. On April 7, 2016, he also filed an appeal with the agency's internal Disciplinary Review Board (DRB), a committee comprised of employees from various divisions within the FBI who meet on a regular basis to review employee appeals of OPR's final decisions. I-3 AF, Tab 7-30; I-4 AF, Tab 24 at 44-45. The DRB met on October 18, 2016, to review the appellant's removal,[3] I-4 AF, Tab 24 at 45, and on October 21, 2016, it found that OPR reasonably concluded that the appellant violated the agency's use of deadly force policy, I-3 AF, Tab 14 at 4-6. However, it found that substantial evidence did not exist to support the lack of candor/lying—no oath charge. *Id*. It also appears to have limited the scope of the agency's reliance on the appellant's refusal to cooperate with investigations as an aggravating penalty factor. *Id*. at 5. Specifically, the DRB referred only to the appellant's failure to cooperate after his OIG interview. *Id*. This failure to cooperate consisted of the appellant's refusal to participate in a reenactment of the shooting. I-3 AF, Tab 14 at 38 n.29; I-4 AF, Tab 24 at 41. The administrative judge and the parties adjudicated the case solely on the charge relating to the use of deadly force.[4]

¶8     On May 3, 2018, the administrative judge issued an initial decision on the written record.[5] ID at 2. She found that the agency proved by preponderant

---

[3] The initial decision states that the DRB met on February 4, 2016. ID at 6. However, the record shows that the DRB met on October 18, 2016, to review the appellant's removal. I-4 AF, Tab 24 at 45.

[4] Because the parties have not disputed that this is the sole charge at issue, our discussion will be similarly focused.

[5] The appellant withdrew his initial request for a hearing. IAF, Tab 1 at 2; I-4 AF, Tabs 20-21.

evidence that the appellant did not have a reasonable belief of imminent danger of death or serious physical injury towards himself or his family when he shot the suspect. ID at 11. She also found there to be a clear nexus between the appellant's misconduct and the efficiency of the service. ID at 14. However, she found that the agency's reliance on the three aggravating factors in its penalty determination was in error, and she mitigated the penalty of removal to a 60-day suspension. ID at 15-23. She also found that the appellant failed to prove his affirmative defense alleging a due process violation. ID at 23-24.

¶9      The agency has filed a petition for review arguing that the administrative judge erred in mitigating the penalty of removal to a 60-day suspension. Petition for Review (PFR) File, Tab 3 at 8-17. The appellant has filed a cross petition for review, arguing that the administrative judge applied an incorrect standard in finding that the agency proved the charge and that she erred in finding that he did not prove his affirmative defense. PFR File, Tab 7 at 5-13, 20-22. The appellant has also responded to the agency's petition for review. *Id*. at 13-20, 22-23. The agency has filed a response to the appellant's cross petition for review and a reply to the appellant's response to its petition for review. PFR File, Tabs 11-12.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency proved the charge misuse of a weapon—intentional discharge by preponderant evidence.

¶10      The agency charged the appellant with intentionally firing his weapon outside the scope of the Deadly Force Policy, in violation of FBI Offense Code 5.15 (Misuse of Weapon—Intentional Discharge). I-3 AF, Tab 14 at 102. The Deadly Force Policy only permits the use of deadly force "when necessary, that is, when the officer has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical injury to another person." I-3 AF, Tab 15 at 256. The agency defines "reasonable belief" as being synonymous with probable cause and looks to "the totality of the facts and circumstances known to

[the officer] at the time, and the logical inferences that may be drawn from them." I-3 AF, Tab 14 at 52, 152.

¶11    In removing the appellant, the deciding official relied on the SIRG and OIG reports, which both concluded that it was not objectively reasonable for the appellant to believe that the suspect posed imminent danger of death or serious bodily injury to him or his family.  I-3 AF, Tab 14 at 53-55.  The deciding official agreed with the SIRG's and OIG's questioning of the appellant's judgment to point his weapon at the suspect over a property crime.  *Id*. at 53-54. She considered the appellant's claim that the suspect had moved his hand near his waist and began to turn towards the appellant when the appellant shot him.  *Id*. at 55.  However, she found that, given the appellant's distance from the suspect, his use of a deadly weapon was not objectively reasonable.  *Id*. at 55-56.

¶12    In the initial decision, the administrative judge agreed with the agency that the appellant did not have a reasonable belief that the suspect posed an imminent danger of death or serious physical injury towards him or his family when he shot from his second-floor window.  ID at 11.  Specifically, she agreed with the agency that a reasonable law enforcement officer would not have believed himself to be in imminent danger based on the facts and circumstances at issue here.  *Id*. In making this finding, she credited the appellant's description of the events immediately before and during the shooting.  ID at 10-11, 13.

¶13    In his cross petition for review, the appellant argues that the administrative judge did not correctly apply the standard set forth in *Graham v. Connor*, 490 U.S. 386, 396 (1989), which provides that whether an officer violates the Fourth Amendment's prohibition on unreasonable seizures by using excessive force is determined from the standpoint of a "reasonable officer on the scene."[6]

---

[6] In the initial decision, the administrative judge appears to have construed the appellant's argument to be that a subjective, rather than an objective, standard should apply, and that the agency should have been limited to considering the propriety of the use of force exclusively from the perspective of the appellant at the moment he fired the

PFR File, Tab 7 at 5-6.  The Court explained that "the 'reasonableness' inquiry is an objective one."  *Graham*, 490 U.S. at 397.  Thus, the particular officer's motivations are not relevant.  *Id*.  In furtherance of his argument that his use of force was reasonable under *Graham*, the appellant restates the circumstances surrounding the shooting.  PFR File, Tab 7 at 10-12.  The administrative judge acknowledged most of these facts as not in dispute.  ID at 8-9.  To the extent the appellant is arguing that the administrative judge failed to consider his assertions as to what occurred, we are not persuaded.  An administrative judge's failure to discuss all of the evidence specifically does not mean that she did not consider it in reaching her decision.  *Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

¶14        As to the appellant's argument regarding the standard in *Graham*, we agree with the administrative judge that although the SIRG relied on language from *Graham*, the agency was not required to prove that the appellant violated the suspect's Fourth Amendment rights in order to prove its charge.  ID at 8 n.8.  An agency may "establish and enforce reasonable rules governing the workplace." *Jonson v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 454, ¶ 18 (2015) (quoting *Carosella v. U.S. Postal Service*, 816 F.2d 638, 642 (Fed. Cir. 1987)). In other contexts, the Board has recognized that the inclusion in an agency's policy of terms that also appear in a statutory context does not require it to prove that the employee committed a statutory violation.  *See id*., ¶ 18 (observing that an agency is not required to prove an appellant violated Title VII when it charges him with violating its own policy or rule on sexual harassment).  The agency's policy on the use of deadly force does not cite to *Graham* or to the Fourth

shot.  ID at 12; I-4 AF, Tab 27 at 9.  Although his petition for review now seems to argue that an objective standard applies under *Graham*, he nonetheless appears to conflate the objective and subjective standard, arguing on review that there is no evidence to suggest that "he did not subjectively believe that, at the moment of discharge, the suspect had a gun."  PFR File, Tab 7 at 13.

Amendment.  I-3 AF, Tab 13 at 256-57.  Thus, we discern no basis to require the agency to prove that the appellant violated the constitutional prohibition on unreasonable seizure and decline to distinguish the appellant's situation from that of the officers in *Graham* or other Fourth Amendment cases that he cites.  PFR File, Tab 1 at 5-12.  Although the SIRG appears to have discussed the standards in *Graham*, that body investigates all FBI shooting incidents, including those that are referred for criminal prosecution in which a Fourth Amendment discussion is relevant.  I-3 AF, Tab 15 at 273.

¶15        In its notice of proposed removal, the agency charged the appellant with a violation of its policy on the use of deadly force.  I-3 AF, Tab 14 at 102.  The proposing official did not rely on the Fourth Amendment or case law interpreting that amendment in finding that the appellant violated this policy.  *Id*. at 102, 118-22.  Although he referred to *Graham*, it was in the context of discussing the SIRG's deliberations.  *Id*. at 121-22.  Similarly, the deciding official cited *Graham* and other Fourth Amendment cases in response to the appellant's reply to the proposed removal.  *Id*. at 50-58.  However, her conclusion was that the appellant violated the agency's policy, not the Fourth Amendment.  *Id*. at 58.  To the extent that the agency discussed *Graham* in its investigations or as background information in its proposed removal and removal decision, we decline to find that the agency was, as a result, bound by that case.  *See Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 203-04 (1997) (declining to require an agency to prove that the appellant made a "threat" when it characterized his improper misconduct a number of ways in the charging letter, including as "threatening").

¶16        We also agree with the administrative judge that the appellant violated the agency's deadly force policy.  ID at 7-13.  At the point when he shot the suspect, the appellant estimated that the horizontal distance between himself and the suspect was approximately 30 feet, and the vertical distance was between 10 and 25 feet.  I-3 AF, Tab 14 at 41, 44-45.  Although the appellant asserts that he had knowledge that his neighborhood was a high crime area, he did not tell

investigators that he observed the suspect in any clothing he knew to be indicative of a local street gang, and the record does not otherwise indicate that he knew whether the suspect had a criminal history. I-3 AF, Tab 15 at 79. Further, although he claims his home had "multiple points of entry" for bullets, he does not provide any explanation for his purported belief that the suspect could reach him through these entry points. PFR File, Tab 3 at 11. We find that under these circumstances, his use of deadly force was not reasonable. Accordingly, we affirm the administrative judge's ruling in that regard, and we deny the appellant's cross petition for review.[7]

<u>The administrative judge improperly mitigated the penalty of removal to a 60-day suspension.</u>

¶17     The administrative judge found that the agency failed to properly consider the appropriate *Douglas* factors. ID at 15-21; *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors that are relevant for consideration in determining the appropriateness of a penalty). Therefore, she reweighed the relevant factors, concluding that a 60-day suspension was the maximum reasonable penalty. ID at 21-23. On review, the agency argues that it correctly applied the *Douglas* factors and that the administrative judge's mitigation of the penalty was in error. PFR File, Tab 3

---

[7] In the appellant's cross petition for review, he disputes the SIRG's findings. PFR File, Tab 7 at 7. For example, he argues that the SIRG concluded that he had a duty to retreat, which conflicts with the standard set forth in *Graham*. I-3 AF, Tab 16 at 13. As previously discussed however, the appellant was not charged with a constitutional violation, and therefore, *Graham* does not apply. *See supra* ¶¶ 14-15; ID at 8 n.8. The administrative judge considered this argument and the appellant's other arguments regarding the SIRG report and found them to be without merit. ID at 11-12. The appellant has not demonstrated any error in this finding, and we find no reason to disturb it. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

at 8-17. We agree in part and find that removal is the maximum reasonable penalty for the appellant's misconduct.

¶18     When the Board sustains all of the charges, it will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Portner v. Department of Justice*, 119 M.S.P.R. 365, ¶ 10 (2013), *overruled on other grounds by Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 17. In doing so, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Id.* It is not the Board's function to displace management's responsibility or to decide what penalty it would impose, but to ensure that management judgment has been properly exercised and that the penalty selected by the agency does not exceed the maximum limits of reasonableness. *Id.* Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness.[8] *Id.*

¶19     Here, the agency imposed the penalty of removal due to the following three aggravating factors: the appellant's refusal to accept responsibility, prior discipline, and refusal to cooperate with the investigations. I-3 AF, Tab 14 at 61-63; *see Douglas*, 5 M.S.P.R. at 305-06. The administrative judge found that the agency improperly considered these *Douglas* factors as aggravating factors and mitigated the penalty of removal to a 60-day suspension. ID at 16-21. As discussed below, we agree with the administrative judge as to some, but not all, of these factors. We reverse her finding that a 60-day suspension was the maximum reasonable penalty.

---

[8] On review, neither party disputes the administrative judge's finding of nexus between the appellant's misconduct and the efficiency of the service. ID at 14. PFR File, Tab 7 at 4 n.4. We discern no basis to disturb this finding.

*The administrative judge erred in finding that the appellant's refusal to accept responsibility was not an aggravating factor.*

¶20     In the decision to remove the appellant, the deciding official stated that she considered the appellant's refusal to accept responsibility for violating the policy as an aggravating factor, and the DRB agreed. I-3 AF, Tab 14 at 5, 61-62. In the initial decision, the administrative judge found that this consideration was inappropriate because the Board has held that it is improper to consider an appellant's denial of misconduct as an aggravating factor. ID at 17 (citing *Fowler v. U.S. Postal Service*, 77 M.S.P.R. 8, 15 (1997)). Thus, she concluded that it is also inappropriate to consider an appellant's lack of remorse for the misconduct when that lack of remorse is a consequence of his denial of the misconduct. ID at 17 (citing *Smith v. Department of the Nav*y, 62 M.S.P.R. 616, 621 (1994)).

¶21     On review, the agency points to several Board cases that state that it is appropriate to consider the effect that an appellant's refusal to take responsibility has on his potential for rehabilitation. PFR File, Tab 3 at 11. It observes that the deciding official and the DRB both expressed concern that the appellant's lack of remorse suggested that he would display the same lack of judgment in the future. *Id*. at 11-12; I-3 AF, Tab 14 at 62. The agency also argues that the case cited by the administrative judge to support her conclusion that the agency incorrectly applied this factor, *Smith*, 62 M.S.P.R. 616, relied on a case, *Walsh v. Department of Veterans Affairs*, 62 M.S.P.R. 586, 595-96 (1994*)*, that was subsequently overruled by the U.S. Supreme Court, *LaChance v. Erickson*, 522 U.S. 262 (1998); PFR File, Tab 3 at 10 n.5. We agree.

¶22     In *LaChance*, the Supreme Court disagreed with the Board and the U.S. Court of Appeals for the Federal Circuit that an agency could not use an employee's false denials in selecting the penalty or as a basis for a misconduct charge. 522 U.S. at 264-65. The Court concluded that the Fifth Amendment right to remain silent does not prohibit an agency from taking action against an

employee for false statements. *Id*. at 266-68. An employee's rationalizations and lack of remorse for proven misconduct indicate little rehabilitative potential and are properly considered as aggravating factors. *Neuman v. U.S. Postal Service*, 108 M.S.P.R. 200, ¶ 26 (2008). In the instant case, the deciding official explained that the appellant's failure to admit his actions were objectively unreasonable caused her to believe he would "never be able to candidly examine [his] actions and acknowledge [his] mistakes." I-3 AF, Tab 14 at 61. She expressed the concern that his conduct could recur. *Id*. at 62. We agree that the appellant's failure to apologize or acknowledge any wrongdoing suggested he would repeat similar misconduct in the future. Accordingly, it was appropriate to consider the appellant's denial and lack of remorse as aggravating factors.

*The appellant's prior discipline was properly considered to the extent it reflected on his potential for rehabilitation*.

¶23    Within 1 year after the shooting incident at issue in this appeal, the appellant received a 3-day suspension for loss of his weapon. I-3 AF, Tab 14 at 61. The loss resulted from the appellant's leaving the weapon in the trunk of a vehicle parked in the same neighborhood as the shooting incident. *Id*. The appellant appealed the suspension, but it was upheld, effective December 12, 2014. I-3 AF, Tab 15 at 59. Both the deciding official and the DRB considered this suspension as an aggravating factor. I-3 AF, Tab 14 at 5, 61; I-4 AF, Tab 24 at 23-24. The administrative judge found that it was inappropriate to consider discipline for conduct that occurred 1 year after the July 18, 2012 shooting incident. ID at 18 (citing *Cantu v. Department of the Treasury*, 88 M.S.P.R. 253, ¶ 6 (2001) (finding that an agency erred in considering as part of the appellant's past disciplinary record a suspension that was imposed after the incident on which the agency based his removal). We agree.

¶24    Citing a nonprecedential Board decision, the agency claims that there is no requirement that it consider only discipline for conduct that predates the instant misconduct. *Id*. at 13. The agency's arguments are unconvincing.

Nonprecedential decisions are not binding on the Board except when they have a preclusive effect on the parties. 5 C.F.R. § 1201.117(c)(2). Thus, we decline to consider the nonprecedential decision on which the agency relies. However, we modify the administrative judge's finding to the extent the deciding official relied on the past misconduct to illustrate the appellant's lack of rehabilitative potential. I-3 AF, Tab 14 at 61; I-4 AF, Tab 24 at 41-42. In particular, the deciding official found that the conduct underlying the appellant's 3-day suspension showed he still had "not learned appropriate weapon handling and safety." I-3 AF, Tab 14 at 61. We find this to be a relevant and proper consideration in the penalty determination. *See Douglas*, 5 M.S.P.R. at 305.

> *The appellant's declination of an agency request to reenact the shooting did not constitute a failure to cooperate with an investigation.*

¶25      The agency also considered the appellant's refusal to cooperate with the investigations as an aggravating factor. I-3 AF, Tab 14 at 61. Specifically, the agency asserted that, when it conducted the appellant's compelled interview with the OIG, he was advised that he could be subject to disciplinary action, including dismissal, if he refused to answer or reply truthfully to each question. I-3 AF, Tab 15 at 102, 135; I-4 AF, Tab 24 at 30. At the end of the interview, the OIG asked the appellant if he and his wife would be willing to reenact the event at his home. I-3 AF, Tab 15 at 243. The appellant declined. I-3 AF, Tab 14 at 48. The agency then included his failure to cooperate in an investigation as an aggravating factor in his penalty analysis. *Id*. at 61.

¶26      The administrative judge acknowledged that an appellant can be removed for failure to cooperate in an investigation when, as here, he receives assurance that his statements will not be used against him in a criminal proceeding.[9] ID

---

[9] In *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967), the Supreme Court held unconstitutional the use of statements obtained under threat of removal from office in subsequent criminal proceedings.

at 20-21; *Modrowski v. Department of Veterans Affairs*, [252 F.3d 1344](#), 1350-51 (Fed. Cir. 2001). The administrative judge found that the appellant was only advised of his options to answer under the granted immunity or to remain silent and face dismissal with respect to the questions asked of him at the OIG interview and that there was no evidence that the notice extended to a declination of a request for a reenactment. ID at 21. As such, she found that the agency erred in using the appellant's decision not to agree to the OIG's request as an aggravating factor. *Id*.

¶27 On review, the agency argues that it was proper to consider the appellant's failure to cooperate with the OIG investigation by declining a reenactment because he was informed that he would not be prosecuted by either local or Federal prosecutors and was provided "the appropriate notification regarding immunity and the requirement to respond to the questions." PFR File, Tab 3 at 15-17. In requesting that the appellant and his wife participate in a reenactment, the investigator stated at the end of the interview:

> The only other thing that I have going forward, and that, that we would like to request, and again, this is a request. Is we would like to interview your wife, and if you would be willing to reenact the, the event at your, at your residence, we would be interested in doing that as well, going forward, just trying to document all the facts. That's a request. Okay?

I-3 AF, Tab 15 at 243. The administrative judge found that the appellant was not on notice that his refusal to participate in the reenactment could result in discipline. ID at 21. After considering the language of the agency's requests, we find that it created an impression that the appellant would suffer no consequences for his refusal. Accordingly, we agree that the declination of the agency's

request did not constitute a refusal to cooperate and should not have been used as an aggravating factor.[10]

*The agency-selected penalty of removal was reasonable.*

¶28     In mitigating the penalty of removal to a 60-day suspension the administrative judge considered the agency's guidelines for discipline, which state that the standard penalty for a violation of FBI Offense Code 5.15 (Misuse of Weapon—Intentional Discharge) is a 30-day suspension.  ID at 21; I-3 AF, Tab 14 at 61.  Mitigating factors warrant a 5- to 14-day suspension, and aggravating factors warrant a 45-day suspension to dismissal.  ID at 22; I-3 AF, Tab 14 at 61.  The administrative judge concluded that, because the aggravating factors should not have been applied, but the offense was still a serious one, a 60-day suspension was at the maximum reasonable penalty.  ID at 22-23.

¶29     On review, the agency argues that, even if the above factors were incorrectly considered to be aggravating, the nature and seriousness of the misconduct and the higher standard of conduct imposed on law enforcement officers still warrant removal.  PFR File, Tab 3 at 8-10, 12-15.  As discussed above, we found that the agency properly relied on the appellant's denial of the misconduct and his lack of remorse and rehabilitative potential as aggravating

---

[10] The appellant claims in his cross petition for review that the agency's consideration of his alleged failure to cooperate as an aggravating factor also constituted a Fifth Amendment violation, which protects his right against self-incrimination.  PFR File, Tab 7 at 20-22.  The administrative judge found that the appellant failed to establish that either the Fifth Amendment or *Garrity* is applicable to a situation in which an appellant refuses a request to perform a voluntary reenactment unless otherwise specified.  ID at 23.  We agree.  We have found that the appellant was informed his participation in the reenactment was voluntary.  The privilege against self-incrimination applies when testimony is compelled.  *See DiMasso v. Department of Transportation*, 735 F.2d 526, 528 (Fed. Cir. 1984) (explaining that an employee's Fifth Amendment right against self-incrimination was not violated when he was not required to answer the question posed to him in order to retain his job).  Because the appellant was not threatened with any consequence, his decision not to reenact the shooting was not compelled.

factors. *See supra* ¶¶ 22, 24. Further, it is well established that the most important factor in assessing an agency's selected penalty is the nature and seriousness of the offense and its relation to the employee's duties, position, and responsibilities. *Martin v. Department of Transportation*, 103 M.S.P.R. 153, 157 (2006), *aff'd per curiam*, 224 F. App'x 974 (Fed. Cir. 2007). The deciding official emphasized that the appellant's misconduct was directly related to the agency's mission and the appellant's ability to exercise reasonable use of force in the performance of his duties in the future. I-3 AF, Tab 14 at 61-62. It is also well established that an agency is entitled to hold law enforcement officers to a higher standard of conduct than other Federal employees. *O'Lague v. Department of Veterans Affairs*, 123 M.S.P.R. 340, ¶ 20 (2016), *aff'd per curiam*, 698 F. App'x 1034 (Fed. Cir. 2017).

¶30    Based on the foregoing, we reverse the administrative judge's mitigation of the penalty and find the agency-selected penalty of removal to be reasonable. *See Mahan v. Department of the Treasury*, 89 M.S.P.R. 140, ¶¶ 2, 11-12 (2001) (upholding an agency-imposed penalty of removal when an employee fired her agency-issued weapon while off duty during a domestic dispute); *Kranz v. Department of Justice*, 62 M.S.P.R. 630, 634-37 (finding removal to be reasonable when an appellant violated state law by carrying his gun, which discharged during an off-duty altercation), *aff'd per curiam*, 43 F.3d 1486 (Fed. Cir. 1994); *Hylton v. Department of Transportation*, 13 M.S.P.R. 335, 337-38, 340 (1982) (sustaining a removal when a supervisory police officer discharged his weapon twice at an airport in an attempt to apprehend a fleeing suspect notwithstanding 20 years of service and the fact that only the suspect was injured as a result of his actions).

¶31    Accordingly, we grant the agency's petition for review, deny the appellant's cross petition for review, and reverse the initial decision insofar as it mitigated the penalty. We affirm the appellant's removal.

**NOTICE OF APPEAL RIGHTS**[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                              /s/ for
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.