**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| HAROLD J. SHARP,<br>　　　　　Appellant, | DOCKET NUMBER<br>DE-0752-20-0103-I-1 |
| v. | |
| DEPARTMENT OF THE AIR FORCE,<br>　　　　　Agency. | DATE: October 9, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Harold J. Sharp</u>, Cheyenne, Wyoming, pro se.

<u>Matthew Mackey</u> and <u>Ray Shackelford</u>, Joint Base Andrews, Maryland,
　　for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

### FINAL ORDER

The agency has filed a petition for review of the initial decision that reversed the appellant's removal for conduct unbecoming. For the reasons set forth below, we GRANT the agency's petition for review and REVERSE the initial decision. The appellant's removal is SUSTAINED.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

The appellant was a GS-11 Quality Assurance Specialist for the agency, stationed at F.E. Warren Air Force Base, Wyoming. Initial Appeal File (IAF), Tab 15 at 18. On August 22, 2019, the agency proposed the appellant's removal based on one charge of conduct unbecoming a Federal employee with three specifications, all relating to sexually inappropriate comments that the appellant allegedly made to two male service members, 1st lieutenant (Lt.) A and 1st Lt. D. *Id.* at 49-53. After the appellant responded to the notice, the deciding official issued a decision sustaining all specifications of the charge and removing the appellant effective December 5, 2019. *Id.* at 21-47. The appellant retired effective that same day.[2] *Id.* at 18-19.

The appellant filed a Board appeal, contesting the charges on the merits and raising an affirmative defense of retaliation for union grievance activity. IAF, Tab 1 at 3, 5, Tab 11 at 4-16. He waived his right to a hearing. IAF, Tab 1 at 2. After the close of the record, the administrative judge issued an initial decision reversing the appellant's removal on the merits. IAF, Tab 20, Initial Decision (ID). For each of the three specifications, the administrative judge variously credited the appellant's denials over the agency's evidence and found that the agency's allegations did not rise to the level of misconduct. ID at 5-12. Having reversed the appellant's removal on those grounds, the administrative judge declined to reach the appellant's affirmative defense. ID at 13-14.

The agency has filed a petition for review, certifying compliance with the administrative judge's interim relief order and disputing the administrative judge's assessment of the evidence. Petition for Review (PFR) File, Tab 1. The appellant has not filed a response.

---

[2] As the administrative judge correctly found, the appellant's retirement did not divest the Board of jurisdiction over the removal action. IAF, Tab 9 at 2; *see* 5 U.S.C. § 7701(j); *Mays v. Department of Transportation*, 27 F.3d 1577, 1579-81 (Fed. Cir. 1994).

**ANALYSIS**

In an appeal of a removal under 5 U.S.C. chapter 75, the agency bears the burden of proving by preponderant evidence that its action was taken for such cause as would promote the efficiency of the service. *MacDonald v. Department of the Navy*, 4 M.S.P.R. 403, 404 (1980); 5 U.S.C. § 1201.56(a)(1)(ii). To meet this burden, the agency must prove its charge, establish a nexus between the charge and the efficiency of the service, and demonstrate that the penalty imposed was reasonable. *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997). Even if the agency carries this burden, the removal may not be sustained if the appellant shows that it was based on a prohibited personnel practice described in 5 U.S.C. § 2302(b). 5 U.S.C. § 7701(c)(2)(B); 5 C.F.R. § 1201.56(a)(2)(iii).

A charge of "conduct unbecoming" has no specific elements of proof; rather, it is established by proving that the appellant committed the acts of misconduct alleged in support of the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). When disrespectful or inappropriate comments are alleged, the Board will consider the context in which the employee made the allegedly inappropriate comments to determine whether the comments constituted misconduct and whether the penalty imposed for such misconduct is reasonable. *Daigle v. Department of Veterans Affairs*, 84 M.S.P.R. 625, ¶ 6 (1999).

Specification 1

Under Specification 1, the agency alleged as follows:

On or about 11 April 2019, you waited outside the Loftis Room for [1st Lt. A], and when he exited the room, engaged him in a conversation where you made unwanted sexual remarks such as, "Are you sure you're not gay? Because sometimes you have these gay tendencies and you carry yourself like a gay man would." You continued this conversation until [Major B] intervened."

IAF, Tab 15 at 49.

In his initial decision, the administrative judge considered the unsworn memoranda of Major B and 1st Lt. C, who witnessed the April 11, 2019 conversation from afar and could not tell who said what to whom, but stated that 1st Lt. A appeared uncomfortable.[3] ID at 7-8; IAF, Tab 15 at 79, 93. He also considered the sworn statement of 1st Lt. D, who stated that that he had seen the appellant take 1st Lt. A aside on several unspecified occasions and that 1st Lt. A at those times appeared uncomfortable. ID at 8; IAF, Tab 15 at 82. However, the administrative judge found that these statements were irrelevant because they did not pertain to whether the appellant made the inappropriate comments as charged.

ID at 8. The administrative judge also considered the unsworn statements of 1st Lt. A and the appellant, the only percipient witnesses. ID at 6-8. The appellant claimed a good working relationship with 1st Lt. A and denied ever questioning 1st Lt. A's sexuality or making sexual advances or suggestions towards him. IAF, Tab 15 at 72. 1st Lt. A stated in relevant part as follows:

> The point of conversation was aimless and not business related at all once he engaged me. He mentioned that during his 6 months [assigned to a different work unit] that I never came by to see him and that he missed seeing my "beautiful face." This is one of the many encounters where he would bring up my sexual orientation. Having full knowledge that I am married and have stated that I am attracted only to members of the opposite sex, [the appellant] will periodically challenge my interests. Often, he would ask "Are you sure you're not gay? Because sometimes you have these gay tendencies and you carry yourself like a gay man would."

IAF, Tab 15 at 88.

The administrative judge found preponderant evidence that the appellant told 1st Lt. A that he missed seeing his "beautiful face," but that this statement alone did not rise to the level of misconduct. ID at 8-9. He also found that 1st Lt. A's statement referred to the appellant making comments about his

---

[3] Major B and 1st Lts. A, C, and D later swore to the accuracy of their signed statements. IAF, Tab 18 at 77-78, 81-82, 85-86, 91-92.

sexuality in the past but not on April 11, 2019, and in any event, these alleged comments also were not severe enough to rise to the level of misconduct. ID at 9.

On petition for review, the agency argues that the administrative judge provided no analysis to support his conclusion that the appellant's alleged remarks were not sufficiently severe to constitute actionable misconduct. PFR File, Tab 1 at 9-10. The agency further argues that the administrative judge should not have dismissed the statements of Major B and 1st Lts. C and D as irrelevant because these individuals provided evidence of 1st Lt. A's reaction to the appellant's comments. *Id.* at 9-11. It argues that "unwanted sexual remarks made on duty and in the workplace to a coworker, making that coworker visibly uncomfortable, are of a nature that would support a charge of conduct unbecoming." *Id.* at 10.

We decline to rule that questions or comments from one coworker to another about his sexual orientation are per se inappropriate in the workplace. The inappropriateness or not of such comments would depend on the totality of the circumstances, including exactly what was said, the preexisting personal relationship between the two employees, and whether the employee being accused of misconduct knew or should have known that his questions or comments were unwanted. *See Daigle*, 84 M.S.P.R. 625, ¶ 6 (finding that the inappropriateness of comments depends to a certain extent on their context). For this reason, we agree with the agency that the statements of Major B and 1st Lt. C could be relevant to the extent that they tend to show that the appellant knew or should have known that 1st Lt. A was uncomfortable with the conversation.[4] However, this presupposes that the appellant actually made "sexual remarks" during this conversation as alleged by the agency. IAF, Tab 15 at 49.

For the reasons explained in the initial decision, we agree with the administrative judge that the agency failed to prove that the appellant specifically

---

[4] We agree with the administrative judge that the general statements of 1st Lt. D are not relevant to this specification because they do not pertain to the particular conversation at issue. ID at 9; IAF, Tab 15 at 82.

said, "Are you sure you're not gay? Because sometimes you have these gay tendencies and you carry yourself like a gay man would." IAF, Tab 15 at 49. As the administrative judge found, the only evidence of this specific comment, 1st Lt. A's statement, refers to the appellant making this comment in the past, and not on April 11, 2019, as charged. ID at 9; IAF, Tab 15 at 88. However, reading 1st Lt. A's statements as a whole, he clearly states that the appellant brought up his sexual orientation during the April 11, 2019 conversation. IAF, Tab 15 at 88. Apparently, 1st Lt. A did not recall exactly how this particular conversation went, but a reasonable reading of his statement is that the appellant took a similar approach as he had in the past, questioning his sexual orientation on the basis of certain attributes that he perceived. *Id.* We find that Lt. A's statement, if true, proves the essence of the charge of conduct unbecoming a Federal employee. *See Prather v. Department of Justice*, 117 M.S.P.R. 137, ¶¶ 25-29 (2011) (finding that an agency proved the essence of a charge of conduct unbecoming by proving he persuaded women to engage in sexual acts with him by telling them that they would be "healed" if they had sexual relations with him).

The appellant presented quite a different account, stating that 1st Lt. A approached him directly, greeted him warmly, and engaged him in conversation about multiple non-sexual topics. *Id.* at 73. We find 1st Lt. A's account to be more credible because, unlike the appellant's, it is consistent with the statements of Major B and 1st Lt. C, and 1st Lt. A swore to its accuracy. *See Social Security Administration v. Whittlesey*, 59 M.S.P.R. 684, 692 (1993) (stating that a sworn statement has greater evidentiary weight than one that is unsworn), *aff'd*, 39 F.3d 1197 (Fed. Cir. 1994) (Table); *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (stating that, to resolve credibility issues, the Board will consider, among other things, the contradiction of the witness's version of events by other evidence or its consistency with other evidence).

Based on this evidence, we find that the appellant's comments about 1st Lt. A's sexual orientation constituted misconduct under the totality of the

circumstances. The appellant knew or should have known that his remarks were unwanted because 1st Lt. A had previously expressed to the appellant that he was firm in his sexual orientation and he was visibly uncomfortable during the April 11, 2019 conversation. IAF, Tab 15 at 79, 88, 93. The appellant also knew or should have known that his personal relationship with 1st Lt. A did not lend itself to such discussions; 1st Lt. A had been intentionally avoiding the appellant due to exactly this type of harassment, and his success in doing so was the very pretext that the appellant used to initiate the conversation. IAF, Tab 15 at 88. Therefore, we conclude that the agency met its burden to prove specification 1.

Specification 2

Under Specification 2, the agency alleged as follows: "Between on or about 1 October 2016 and on or about 11 April 2019, you had indicated to [1st Lt. A] that you had sexually defiled a photo of yourself and [1st Lt. A]." IAF, Tab 15 at 49.

The administrative judge found that this specification was not in accordance with due process because it was overly vague with respect to the timeframe and to the misconduct alleged. ID at 9-10. The administrative judge further found that, even if he were to reach the merits of this specification, he would still not sustain it because the evidence that the agency offered in support was insufficient. ID at 10. Specifically, he considered 1st Lt. A's sworn statement that once after a game of racquetball, he took a picture with the appellant at the appellant's request, and "days later," the appellant "strongly insinuated that he sexually defaced the picture of us."[5] ID at 10; IAF, Tab 15 at 88. The administrative judge found that this conclusory statement did not, in and of itself, constitute preponderant evidence that the alleged misconduct occurred. ID at 10.

---

[5] The appellant denied having "any illicit pictures of [1st Lt. A] or myself that I would perform such an act." IAF, Tab 15 at 70. The administrative judge found that this statement did not address whether he made the comments to 1st Lt. A as alleged. ID at 10.

On petition for review, the agency disputes the administrative judge's finding that Specification 2 was so vague as to violate guarantees of due process. PFR File, Tab 1 at 12-14. We agree.[6] Due process requires that the employee receive notice of the reasons for his removal that is sufficiently detailed for him to make a meaningful reply, *Mason v. Department of the Navy*, 70 M.S.P.R. 584, 586 (1996), and in this case, the specification as written is quite vague as to the time that this incident supposedly occurred and exactly what the appellant was supposed to have said about "sexually defiling" the unidentified photograph, IAF, Tab 15 at 49.

However, reading the evidence that the agency attached to its proposal, its allegation becomes more clear. The incident was supposed to have occurred approximately 2 years previously, shortly after the appellant and 1st Lt. A played racquetball together. *Id.* at 62-63, 86, 88. After the match, the appellant allegedly took a photograph of himself with 1st Lt. A, and a few days later, salaciously complimented 1st Lt. A's appearance in the picture and told him that he "may have" used the picture as a visual aid for masturbation and achieved one of the best orgasms of his life. *Id.* at 63, 86, 88. In any event, by the time he replied to the notice of proposed removal, the appellant clearly had a sufficient understanding of what the agency was alleging because he formulated a clear and coherent reply, specifically denying "self-pleasing myself by referencing a photo of me and [1st Lt. A]. *Id.* at 28-29. When an appellant comes forward and refutes a charge made against him, the Board cannot find that he was not given notice of the charge. *Bias v. Equal Employment Opportunity Commission*, 20 M.S.P.R. 216, 219 (1984).

---

[6] Although we do not find a due process violation in this case, we disagree with the agency that it was inappropriate for the administrative judge to raise the issue at all. PFR File, Tab 1 at 14. An administrative judge may raise due process issues sua sponte if necessary to prevent a manifest injustice. *Powers v. Department of the Treasury*, 86 M.S.P.R. 256, ¶ 10 n.3 (2000). This is especially so in cases like this one where the appellant is proceeding pro se.

The agency also contests the administrative judge's finding that the evidence of record is insufficient to support the charge. PFR File, Tab 1 at 14-15. We agree with the agency on this point as well. The administrative judge found that the only evidence of record on this issue was 1st Lt. A's statement that the appellant "strongly insinuated that he sexually defaced the picture of us." ID at 10. However, as recounted above, 1st Lt. A provided a much more detailed description of this incident, what led up to it, and exactly what was said. IAF, Tab 15 at 86, 88. These statements can hardly be characterized as conclusory, and even though they are somewhat jarring, we do not find them to be inherently improbable or contrary to any record evidence apart from the appellant's unsworn denials. We therefore credit 1st Lt. A's sworn statement over the appellant's unsworn statement to the contrary. *See Whittlesey*, 59 M.S.P.R. at 692. The appellant's statements to 1st Lt. A obviously constituted actionable misconduct. Therefore, we conclude that the agency met its burden to prove specification 2.

Specification 3

Under Specification 3, the agency alleged as follows:

[B]etween on or about 1 February 2017 and on or about 28 February 2017, you conducted an [Isolated Personnel Report (ISOPREP)] appointment with [1st Lt. D] in such a way that made [1st Lt. D] feel uncomfortable. Specifically, you secluded yourself with [1st Lt. D] and questioned [1st Lt. D] about his sexual orientation. This is not part of the ISOPREP process.

IAF, Tab 1 at 49.

In his initial decision, the administrative judge considered the sworn declaration of 1st Lt. D, who stated that he approached the appellant to ask him for help with ISOPREP actions prior to going on international leave, and that the appellant then escorted him into a computer room and closed the door behind them. ID at 11; IAF, Tab 15 at 83. According to 1st Lt. D, the appellant "used this as an opportunity to ask questions about myself. With his questions, [the

appellant] seemed to take a particular interest in topics like my racial heritage and sexual orientation." IAF, Tab 15 at 83. The administrative judge also considered the appellant's response to the notice of proposed removal, in which he admitted to conducting ISOPREP training with 1st Lt. D but denied questioning him about his sexuality. ID at 11-12; IAF, Tab 15 at 28-29. The appellant also admitted to closing the door to the computer room, but he explained that this is standard operating procedure because the room is classified, and the doors need to remain closed whenever the computer is in use. IAF, Tab 15 at 29.

In light of this evidence, the administrative judge found that the appellant's act of inviting 1st Lt. D into the computer room and closing the door was appropriate given the task at hand and the requirement that the door remain closed while the computer was in operation. ID at 12. He further found the appellant's denial of misconduct to be more credible than 1st Lt. D's "conclusory statement that the appellant 'seemed to take a particular interest in [his] sexual orientation,'" and that the agency failed to present any evidence, let alone preponderant evidence, to support its specification. ID at 12.

On petition for review, the agency appears to dispute the appellant's assertion about the need to close the computer room door, questioning why 1st Lt. D would have felt uncomfortable if this were the correct protocol. PFR File, Tab 1 at 15. We decline to consider this argument, which the agency did not raise below. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (stating that the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence). Even now, the agency has not affirmatively argued that the appellant's statement was incorrect, much less pointed to any actual evidence contradicting it. The Board is not acquainted with the computer rooms at Warren Air Force Base, and we lack independent knowledge of the protocols for securing its various classified areas. In the absence of evidence to the contrary, we accept as true the

appellant's statement that the doors to this room are required to be closed while the computer is in use.  IAF, Tab 15 at 29.

The agency also argues that the administrative judge failed to make credibility determinations with respect to Specification 3.  It argues that the appellant has shown a propensity for untruthfulness in the past, and that 1st Lt. D's statement accusing the appellant of misconduct is more credible than the appellant's denial thereof.  PFR File, Tab 1 at 16-17.  However, we find that credibility determinations are immaterial to our analysis of Specification 3 because, as the administrative judge correctly found, the agency has not provided any evidence whatsoever to support this specification.  ID at 12; *see Hooper v. Department of the Interior*, 120 M.S.P.R. 658, ¶ 14 (2014) (finding credibility determinations to be unnecessary in the absence of conflicting testimony). Putting the appellant's denials of misconduct aside and taking everything in 1st Lt. D's statements as true, there is still no evidence that the appellant "questioned [1st Lt. D] about his sexual orientation" as alleged.  IAF, Tab 15 at 49.  The closest that the agency comes to providing such evidence is 1st Lt. D's statement that the appellant, with his questions, "seemed to take a particular interest in topics like my racial heritage and sexual orientation."  *Id.* at 83. However, we decline to find that interest in these topics, alone, is misconduct. *See Bostock v. Clayton County*, 590 U.S. 644, 666-73 (2020) (determining that discrimination based on sexual orientation is discrimination because of sex in violation of Title VII).  1st Lt. D was unable to recount even vaguely what the appellant said that led him to believe that the appellant was taking an interest in his sexual orientation such that we could make a finding that the appellant's questions were inappropriate.  IAF, Tab 15 at 82.

Therefore, we agree with the administrative judge that the agency did not prove specification 3.  Nevertheless, because we have sustained Specifications 1 and 2, we conclude that the agency has proved its charge of conduct unbecoming. *See Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990)

(stating that, where more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

Penalty

When all of the agency's charges are sustained, but some of the underlying specifications are not, the agency's penalty determination is entitled to deference and should be reviewed only to determine whether it is within the parameters of reasonableness. *Payne v. U.S. Postal Service*, 72 M.S.P.R. 646, 650 (1996). Nevertheless, an agency's failure to sustain all of its supporting specifications may require, or contribute to, a finding that the agency's penalty is not reasonable. *Id.* at 651. Therefore, although the appellant has not challenged the severity of the penalty per se, some discussion of the issue is warranted. *Cf. Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 308 (1981) ("In many cases the penalty, as distinct from the underlying conduct alleged by the agency, will go unchallenged and need not require more than prima facie justification.").

The record in this appeal contains a *Douglas* factors worksheet completed by the deciding official. IAF, Tab 18 at 16-23. Regarding the nature and severity of the offense, which is usually of primary importance in making a penalty determination, *see Jones v. Department of the Interior*, 97 M.S.P.R. 282, ¶ 13 (2004), the deciding official found the appellant's misconduct to be extremely serious because it was intentional and had a severely negative effect on the Warren Air Force Base workforce, to the point that service members were altering their own behavior to avoid encountering the appellant, IAF, Tab 18 at 16. Even in the absence of Specification 3, we agree with the deciding official's assessment. The Board views harassment of this sort as a serious matter and has routinely upheld removals for it, even when significant mitigating factors are present. *E.g.*, *Alberto v., Department of Veterans Affairs*, 98 M.S.P.R. 50, ¶¶ 10-12 (2004), *aff'd*, No. 05-3090, 2005 WL 1368150 (Fed. Cir. June 10, 2005); *Alexander v. U.S. Postal Service*, 67 M.S.P.R. 183, 188-92 (1995); *Carosella v.*

*U.S. Postal Service*, 30 M.S.P.R. 199, 202-03 (1986), *aff'd*, 816 F.2d 638 (Fed. Cir. 1987).

The deciding official also considered the appellant's prior discipline, including a March 26, 2019 letter of reprimand and suspensions in 2008 and 2010. He found this prior discipline to be an aggravating factor. IAF, Tab 15 at 49, 94 99, 104; Tab 18 at 17-18. He also found that the appellant was well aware that his conduct was inappropriate, and that this was an aggravating factor as well. IAF, Tab 18 at 18, 21. We agree. We also agree with the deciding official that, in light of the appellant's prior discipline for similar actions and his lack of remorse, he has not exhibited rehabilitative potential. *Id.* at 21. The deciding official considered some mitigating factors as well, including the appellant's 34 years of Federal service and good work performance. *Id.* at 18. However, he found that, notwithstanding these positive aspects of the appellant's work record, removal was still the appropriate penalty. Having considered the deciding official's penalty analysis as a whole, we find that he conscientiously considered the issue, finding some factors mitigating, some aggravating, and still others neutral. IAF, Tab 18 at 16-23. We further find that his chosen penalty of removal was well within the tolerable limits of reasonableness. *See Douglas*, 5 M.S.P.R. at 306. Therefore, we sustain the agency's decision to remove the appellant.

Retaliation for Prior Grievance Activity

In his initial decision, the administrative judge found that the appellant's claim of retaliation for grievance activity did not involve protected whistleblowing, and therefore, it was protected under 5 U.S.C. § 2302(b)(9)(A)(ii). ID at 13-14. Neither party contests this finding, and we agree with the administrative judge's analysis. For an appellant to prevail on a contention of illegal retaliation under 5 U.S.C. § 2302(b)(9)(A)(ii), he has the burden of showing that: (1) he engaged in protected activity; (2) the accused official knew of the activity; (3) the adverse action under review could have been retaliation

under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the adverse action. *Warren v. Department of the Army*, 804 F.2d 654, 656 58 (Fed. Cir. 1986). The appellant's theory of the case is that the removal action was orchestrated by his former supervisor, Lt. Colonel E, and Lt. Colonel E's superior, Colonel F, in retaliation for union activity in which the appellant complained about Lt. Colonel E's treatment of him. IAF, Tab 16 at 9-12.

We find that the first part of the *Warren* test is met. It is undisputed that the appellant engaged in protected activity on April 5, 2019, when, under negotiated grievance procedures, he filed a Step 1 grievance regarding a letter of reprimand, and on April 30, 2019, when he filed a Step 2 grievance on the same matter. IAF, Tab 1 at 102, 104. He also engaged in protected activity on July 1, 2019, when he filed a grievance concerning his performance evaluation. IAF, Tab 16 at 44. We find that the second part of the *Warren* test is met as well. It is undisputed that both Lt. Colonel E and Colonel F were aware of the appellant's grievance activity. IAF, Tab 15 at 102-05, Tab 16 at 36-38, Tab 18 at 5.

Regarding the third part of the test, we find that it has been met with respect to Colonel F but not with respect to Lt. Colonel E. Specifically, the appellant has shown that Colonel F oversaw the investigation into the allegations of harassment underlying the removal. IAF, Tab 15 at 28, 30-31. Although Colonel F did not propose or decide the appellant's removal, we find that his involvement in the investigatory process is sufficient to show that the removal could have been retaliation under the circumstances. *See Warren*, 804 F.2d at 658 (stating that, if agency officials have knowledge of prior protected activity and even slight involvement in it, and are also involved in advising or effectuating the removal of an employee, this may justify an inference of retaliatory motive sufficient to meet the third part of the test). However, the same cannot be said for Lt. Colonel E. Although the appellant speculates, there is no

actual evidence that Lt. Colonel E prompted 1st Lts. A and D to fabricate allegations of sexual harassment against him, and there is no evidence that Lt. Colonel E had any involvement in the investigation or in any other aspect of the removal process.[7] IAF, Tab 16 at 10-11.

To establish a genuine nexus under the fourth part of the *Warren* test, the appellant must show that the adverse action was taken in retaliation for his protected activity. This requires the Board to weigh the severity of the appellant's misconduct against the agency's motive to retaliate. *Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶ 8 (2016). We agree with the appellant that Colonel F would have some motive to retaliate for his grievance activity to the extent that the appellant criticized the character and conduct of one of his appointed subordinates. IAF, Tab 15 at 38-39, Tab 16 at 12; *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1370-71 (Fed. Cir. 2012) (finding evidence of retaliatory motive in an individual right of action (IRA) appeal to the extent that the appellant's disclosures reflected poorly on agency management in general). That said, we find that such motive would not be particularly strong because neither Lt. Colonel E nor Colonel F seem to have suffered any adverse consequences from the grievance activity apart from expending some time and effort to address it. *See Runstrom v. Department of Veterans Affairs*, 123 M.S.P.R. 169, ¶ 17 (2016) (finding weak evidence of retaliatory motive in an IRA appeal where the alleged retaliating officials did not suffer any ramifications as a result of the appellant's disclosure). The evidence supporting removal, however, is quite strong for the reasons explained above. Although the agency failed to prove Specification 3 of its charge, the remainder of the removal action, including the first two specifications and the penalty analysis, is well supported by the record. In assessing the fourth *Warren* factor, we also find it appropriate to consider the degree of influence that Colonel F actually had over the removal

---

[7] The appellant questions why Lt. Colonel E waited 3 weeks to reassign him after receiving 1st Lt. A's allegations, but we fail to see how this might constitute evidence of pretext, as the appellant asserts. IAF, Tab 16 at 10-12.

action. *See Webster v. Department of the Army*, 911 F.2d 679, 689 (Fed. Cir. 1990) ("The burden of demonstrating a 'nexus' between 'the retaliation and petitioner's removal,' . . . ultimately involves establishing a causal connection between the protected activity and the adverse action." (quoting *Warren*, 804 F.2d at 656)). There is no evidence that the investigation in this case was pretextual or that Colonel F exercised significant control over its course. Although the investigating officer ultimately recommended the appellant's removal, IAF, Tab 15 at 66, there is no evidence that Colonel F directed him to do so.[8] Furthermore, apart from transmitting the completed report of investigation, there is no evidence that Colonel F ever communicated directly with the proposing or deciding officials about this matter. Considering the slight evidence of retaliatory motive and the tenuousness of its connection to the strongly supported removal action, we find that the appellant has not proven his affirmative defense of retaliation. *See Crist v. Department of the Navy*, 50 M.S.P.R. 35, 39-40 (1991).

The appellant's affirmative defense is DENIED.

## NOTICE OF APPEAL RIGHTS[9]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should

---

[8] The appellant states his belief that the investigating officer was coached by either Lt. Colonel E or Colonel F, but he has not offered any evidence to support this belief. IAF, Tab 15 at 32.

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may resuLt. in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:            _____

                         *Gina K. Grippando*

                         Gina K. Grippando
                         Clerk of the Board

Washington, D.C.